SHUCK *v.* STATE OF INDIANA.

[No. 28,027.   Filed February 15, 1945.]

*Theodore Lockyear* and *Paul Wever*, both of Evansville, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin* and *Frank Hamilton,* Deputy Attorneys General, for the State.

RICHMAN, J.—The owner of personal property taken in a burglary was called as a witness to testify that he found and identified the stolen property in the apartment of appellant which the witness had entered with police officers after appellant's arrest and in his absence. This testimony forms a vital link in the chain of evidence necessary to sustain appellant's conviction. A few preliminary questions elicited the information, later stipulated by appellee, that the apartment was entered without a search warrant. Appellant's objection to the evidence on the ground that it was obtained by illegal search was overruled and the alleged error is properly presented in this appeal.

Upon what theory the trial judge made the ruling is not disclosed but appellee argues that the question of

admissibility involves a collateral inquiry tending to delay the trial, that a pre-trial motion to suppress the evidence was the only method by which its admissibility could be raised, and therefore appellant's objection came too late. In support of this view appellee cites *Hantz* v. *State* (May 8, 1929, Transfer denied Jan. 29, 1931), 92 Ind. App. 108, 166 N. E. 439; *McSwain* v. *State* (May 10, 1929), 89 Ind. App. 592, 166 N. E. 444, 167 N. E. 568; *People* v. *Castree* (1924), 311 Ill. 392, 143 N. E. 112; *People* v. *Brocamp* (1923), 307 Ill. 448, 138 N. E. 728; *Adams* v. *New York* (1904), 192 U S. 585, 48 L. Ed. 575, 24 Sup. Ct. 372; and six notes in American Law Reports, 24:1408; 32:408; 41:1145; 52:477; 88:348 and 134:819. Appellant relies upon *Karlen* v. *State* (1930), 204 Ind. 146, 174 N. E. 89 and *Heyvert* v. *State* (1935), 207 Ind. 654, 194 N. E. 324. The A. L. R. notes disclose a sharp conflict of authority on the admissibility of evidence procured by illegal search or seizure. In about half of the states, including Indiana, it is not admissible over proper and timely objection. The parties to this appeal accept that view. But they differ as to the time when and the method by which the objection must be made.

There are five other cases reported in the same volume with *McSwain* v. *State,* all based upon *Hantz* v. *State.* In each of the Appellate Court cases and *People* v. *Castree, supra,* officers armed with a search warrant obtained the evidence and when, during the trial, objection was made to its admission the controversy was concerning the validity of the proceedings resulting in issuance of the warrant. This, the courts said, was a collateral inquiry which should have been settled before the trial. It is not now necessary to decide whether they were right, for in the case at bar the facts were different in that no search warrant was

issued. A similiar case was *Youman* v. *Commonwealth* (1920), 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303, cited, probably inadvertently, by Judge McMahan in *Hantz* v. *State* as supporting his view. Declining to follow *Adams* v. *New York, supra; Weeks* v. *United States* (1914), 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. 341, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and subsequent federal cases which are the main support of the Hantz opinion, the opinion of Chief Justice Carroll states:

"In our practice the proper time, and the only time, in which objection can be made to the introduction of evidence by the mouth of witnesses, is when it is offered during the trial, and we cannot think of any good reason why this practice should not obtain in a case like the one we are now considering. We confess our inability to appreciate the force of the reasoning that has resulted in the adoption of the rule that an exception to the general practice should be made in cases like this, on the ground that, if objection to the introduction of the evidence unlawfully obtained was permitted to be first made when it was offered in the course of the trial, the result would be to delay unnecessarily the trial of the case, and require the court to go into a collateral issue for the purpose of determining whether the evidence offered had been lawfully or unlawfully obtained.

"It is a matter of common experience in the practice of law that in almost every jury trial the court must occasionally stop for a time to pass on the competency of evidence to which objection is made, for the purpose of considering the question raised, and in some cases, as, for example, where a dying declaration is offered in a homicide case, and objection is made to its competency, it is the general practice for the court to hear

away from the jury the evidence relating to the declaration, for the purpose of determining whether it should be admitted. In the trial of other cases, such as burglary, arson, robbery, and embezzlement, evidence of other crimes committed by the accused is often admissible against him, although evidence of this nature may bring into the case collateral issues. *Morse* v. *Com.* 129 Ky. 294, 111 S. W. 714. And we do not quite understand how objection to evidence on the ground that it was unlawfully obtained would unreasonably delay the trial of the case, any more so than would an objection made to other important evidence, or how it would inject into the case a collateral issue that would take more time to dispose of than would be required in the disposition of questions involving collateral issues that come up in the trial of almost every important case.

"Certainly, when it was made to appear without dispute, as in this case, that the officer searched the premises without a search warrant, it would not unreasonably delay the trial of the case to make the objection when the evidence was offered, and have the court then determine as a matter of law the competency of the evidence. Nor would it put into the case a collateral issue of any kind. But if there should be a dispute as to whether the search was lawfully made, the court could and should easily and speedily ascertain the truth, and determine the competency of the evidence, by hearing away from the jury the facts that would enable it to pass on the question.

"With the greatest respect for the courts holding that the objection must be made before the trial begins, we feel compelled to say that this practice is put on very narrow grounds and to our minds untenable grounds. Upon mature consideration we are well satisfied that

the general rules of practice prevailing in this state should apply in cases like this, and accordingly hold that seasonable objection was made to the introduction of the evidence, and that all evidence discovered in the course of the unlawful search should have been excluded from the jury."

Upon this excellent reasoning we might rest our decision but we prefer not to ignore the other cases cited by the parties. While the Hantz case was pending on petition to transfer this court decided *Karlen* v. *State, supra.* The appellant therein had driven his coupe at night to a stone quarry where policemen were in wait seeking to surprise and arrest "bootleggers." After some shooting appellant's companions were arrested, his automobile broken into and liquor found therein. There was no pretrial effort to suppress evidence but when the liquor was offered in evidence at the trial it was admitted over his objection. Judge Travis said in substance in the majority opinion that there was no evidence that appellant had committed or was about to commit a felony or misdemeanor or that the officers thought so and that there was no warrant for his arrest or search warrant. He added: "Suspicion alone is not probable cause for a writ of arrest or for search and seizure, and further, it is not probable cause for arrest or search and seizure without a writ, under circumstances such as are present here. . . . The questions which elicited the fact of search and seizure were met with proper objections. Appellant's objections to such questions should have been sustained. The evidence would then be insufficient to sustain the verdict." Judge Martin dissented, citing the Hantz case and saying: "If it is incorrect, it should not be ignored, but should be expressly overruled . . ." To this there was no rejoinder. The judges concurring in

the majority opinion evidently considered the rule stated by Judge McMahan inapplicable to the facts before them and we agree.

Four years later in *Heyvert* v. *State, supra,* where a search warrant had been issued, the appellant used both methods, the pre-trial motion to suppress and the objection when the evidence was offered during the trial. Judge Tremain said each was proper. The statement would have had more force as to the latter method if it alone had been questioned.

The parties cite no other Indiana cases but we have found two, *Callender* v. *State* (1922), 193 Ind. 91, 138 N. E. 817, and *Mata* v. *State* (1932), 203 Ind. 291, 179 N. E. 916, that seem to support Judge Tremain's statement. The Callender case appears to hold that even where a search warrant has issued objection to the evidence at the trial is sufficient. The opinion does not disclose any error assigned upon motion to suppress or that there was such a motion. The attorney general admitted that "The affidavit for search warrant and the search warrant issued thereon are not in the record . . ." The court said: "The question in the instant case is not whether the liquor should have been returned to the defendant, but the question is: Shall the evidence of what was discovered by the invalid search warrant be permitted to be introduced over the objection of the defendant, together with the evidence of officers who searched the premises?" The opinion concludes: "There being no evidence to support the verdict except that procured by the illegal search warrant and improperly admitted, it is not supported by sufficient evidence and is contrary to law."

In the Mata case, after holding that no error was

shown in overruling appellant's motion to suppress, the court says:

"Appellant in his motion for a new trial says the court erred in admitting in evidence the testimony of the two officers who made the search of appellant's premises as to what they found. Appellant objected to the evidence on the ground that appellee had not introduced in evidence the search warrant or explained its absence. The court overruled appellant's objection and allowed the officers to testify. The record shows that the evidence objected to was obtained by a search of appellant's premises. The evidence does not show that any search warrant was read to appellant or served upon him in any way. The record does not show what articles they were directed to search for, or that the offense in relation thereto was substantially alleged, or that the place to be searched was particularly described, and set out in the search warrant. Before appellee was entitled to introduce in evidence property secured by search and seizure, or testimony obtained while making a search of premises under the pretext of a search warrant, it must first show that such evidence was obtained by a lawful process. If the property was seized by search and seizure or the evidence obtained while making a search of the premises, under the pretext of a search warrant, which was invalid for any reason, then the property so seized, or the evidence so obtained, could not be used as evidence against the appellant, and its admission over his objection was prejudicial error."

In *People* v. *Brocamp, supra,* there was no search warrant but appellant "petitioned the court repeatedly, before the trial was entered upon, to make the legal investigation that would disclose whether or not his rights were invaded as he charged in his affidavit, but

the court denied the motions at every turn." The court concluded that "it must be held that the action of the court in denying his motions is reversible error." Obviously after reaching his conclusion, everything said with reference to objection during trial was *obiter dictum.* Cited therein as contrary to what the Illinois court thinks is the correct rule are *State* v. *Slamon,* 73 Vt. 212, 50 A. 1097, 87 Am. St. Rep. 711; *State* v. *Height,* 117 Iowa 650, 91 N. W. 935, 59 L. R. A. 437, 94 Am. St. Rep. 323.

In *State* v. *Slamon, supra,* "an officer had a search warrant to search the person of the respondent for stolen goods." In the search he took a letter from the person of the respondent which, the court said, "was 'not particularly described' in the warrant, and by virtue of the warrant the officer had no right to search for nor to seize it." Objection to its admission was first made at the trial. The court recognized a general rule in line with appellee's contention herein but qualified as follows:

"In most instances this rule is applicable. It is generally considered immaterial how a paper passes into the possession of the one offering it in evidence. But this rule is subject to another rule which is applicable, that, when a party invokes the constitutional right of freedom from unlawful search and seizure, the court will take notice of the question and determine it."

In *State* v. *Height, supra,* the court was more concerned with the primary question whether the Constitution protected an accused against physical examination than with the method by which the objection to evidence of a disease disclosed thereby should be presented. There was no process ordering the physical examination, and the court by reversing the judgment necessarily held that objection at the trial was sufficient.

In the following cases not involving a search warrant it was held that objection was timely when made at the trial. *Walker* v. *State* (1925), 31 Okla. Cr. 326, 239 P. 191; *Kinney* v. *State* (1925), 31 Okla. Cr. 176, 237 P. 626; *State* v. *Raum* (1933), 172 Wash 680, 21 P. (2d) 291; *Amos* v. *United States* (1921), 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. 266; *Agnello* v. *United States* (1925), 269 U S. 20, 70 L. Ed. 145, 46 Sup. Ct. 4, 51 A. L. R. 409; *Salata* v. *United States* (1923), CCA 6th Cir., 286 F. 125. In Texas as in Kentucky it has been held that "trial courts will not be compelled or required" to pass on a motion to suppress before the trial but the question of admissibility is properly presented in the regular course of the trial. *Gentry* v. *State* (1926), 105 Tex. Cr. R. 385, 288 S. W. 213.

The State of Washington has three rules, depending upon the factual situations, all laid down in *State* v. *Dersiy* (1922), 121 Wash. 455, 209 P. 837, 215 P. 34, and restated in *State* v. *Gunkel* (1936), 188 Wash. 528, 63 P. (2d) 376. The first, which fits the facts in our case, reads as follows:

"Where, by the direct or proper cross-examination of the state's witnesses, it is made to appear, or it is otherwise admitted, that the articles which are offered in evidence have been unlawfully seized, it is the duty of the trial court, upon objection, to refuse to receive them in evidence. There being no question of fact under such circumstances, and nothing to require the court to stop in the midst of the trial to try a collateral fact, the court has only to rule on the admissibility of evidence upon admitted or conceded facts."

From the Adams case, *supra,* stems the rule applied by the Supreme Court and relied on in *Hantz* v. *State, supra.* Mr. Justice Day was not required therein either to state or to apply the rule because he held that regard-

less of the alleged illegal source of the evidence it was admissible. Succeeding cases in the Supreme Court, however, have enlarged into a rule what started merely as a *dictum*. Even that court will not apply the rule where the facts are like those of the case at bar. We quote from *Gouled* v. *United States* (1921), 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. 261, as follows:

"It is plain that the trial court acted upon the rule, widely adopted, that courts in criminal trials will not pause to determine how the possession of evidence tendered has been obtained. While this is a rule of great practical importance, yet, after all, it is only a rule of procedure, and therefore it is not to be applied as a hard and fast formula to every case, regardless of its special circumstances. We think rather that it is a rule to be used to secure the ends of justice under the circumstances presented by each case, and where, in the progress of a trial, it becomes probable that there has been an unconstitutional seizure of papers, it is the duty of the trial court to entertain an objection to their admission or a motion for their exclusion and to consider and decide the question as then presented, even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right."

This statement was made in answer to six questions of law certified from a Circuit Court of Appeals. The case of *Amos* v. *United States,* decided the same day, follows the rule so stated. Both cases are discussed and followed in *Agnello* v. *United States, supra.*

The general practice in Indiana is similar to that of Kentucky. Two illustrations may be added to those given by Chief Justice Carroll. There is always a collateral inquiry when a defendant objects to the ad-

mission of his confession. The court stops the trial, excuses the jury and hears evidence upon which he decides whether the confession was "made under the influence of fear produced by threats or by intimidation or undue influence." Section 9-1607, Burns' 1942 Replacement, § 2263, Baldwin's 1934. Such a hearing may require much more time than is needed to ascertain whether a search was illegal. If the rule of the Hantz case is sound it ought to be applied to cases involving confessions, but no case has ever so held. Again, a collateral issue is raised when a child witness is interrogated to find out whether he understands the nature of an oath. Why not determine the qualification of witnesses before the trial?

It must be apparent, as stated in the Youman case, that the requirement of a pre-trial motion to suppress is not the rule but is "an exception to the general practice." Wherever it has been adopted courts have found it necessary to create at least one exception, namely: when it appears that the defendant's knowledge of the illegality of the procuring of the evidence is first acquired at the time it is offered in the course of the trial his objection then made is timely. This is one of the three rules above referred to governing the practice in the State of Washington.

When, as here, there is no doubt of the inadmissibility of the evidence why should a defendant anticipate an attempt to get it before the court or jury? May he not assume that a prosecuting attorney will not offer that which he knows is inadmissible? Why then require a pre-trial motion to suppress? In a case involving a search warrant there may be doubtful questions of law affecting its validity which would justify the offer and perhaps justify a rule requiring inquiry preceding the trial. But no such doubt arises

where there is no warrant. Given the fact that the evidence was procured by search of the defendant's home in his absence and without his consent, only one other fact is material: Was there a search warrant? If not the inquiry is ended, the evidence inadmissible.

These reasons and the authorities above cited make it clear that the exceptional doctrine of the Hantz case, if sound, should not be extended and accordingly we hold that appellant's objection was timely. We do not hold that inadmissibility of evidence might not have been determined prior to the trial upon a motion to suppress, nor is it now necessary either to disapprove or approve *Hantz* v. *State* and the cases based thereon.

Appellee suggests another ground in support of the trial court's ruling. A search with the consent of the accused is not unlawful. 22 C. J. S., *Criminal Law*, § 657, citing in note 89 on page 1020, many cases, including five from Indiana. From this premise it is argued that the court might infer a lawful entry in the absence of appellant's showing to the contrary. The constitutional guaranty, Art. I, § 11 Indiana Bill of Rights, may be said to lock the door of the house of an accused. It may be opened even to those looking for evidence upon which he may be convicted but the court should not assume that he has given them the key. The burden ought to be on the State if it relies upon his invitation or consent. So it has been held in *Kovach* v. *United States* (1931), 53 F. (2d) 639, wherein the court says: "Where officers making search of a dwelling were not acting under a search warrant, the burden is on the government to show that the owner voluntarily consented to the search, and the consent can not be deemed voluntary, unless it be made to appear that it was freely and intelligently given." See also *Meno* v. *State* (1925), 197 Ind. 16, 24,

148 N. E. 420, 423; *Houchin* v. *State* (1935), 58 Okla. Cr. 329, 52 P. (2d) 1085; *Frazier* v. *State* (1931), 119 Tex. Cr. R. 217, 43 S. W. (2d) 597.

It is conceded by appellee that if the evidence was erroneously admitted the judgment must be reversed and a new trial granted. It is so ordered.

NOTE.—Reported in 59 N. E. (2d) 124.