Terry BROWN, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S02–9507–CR–833.

Supreme Court of Indiana.

July 11, 1995.

John Pinnow, Greenwood, for appellant.

Pamela Carter, Atty. Gen. of Indiana and Arthur Thaddeus Perry, Deputy Atty. Gen., Office of the Atty. Gen., Indianapolis, for appellee.

## ON PETITION TO TRANSFER

DeBRULER, Justice.

This case is presented upon a petition to transfer. Ind.Appellate Rule 11(B)(2). Appellant was convicted of robbery, a class C felony. Ind.Code Ann. § 35–42–5–1 (West 1986). In a memorandum decision the Court of Appeals affirmed the trial court. *Brown v. State* (1994), Ind.App., 639 N.E.2d 1059; Ind.Appellate Rule 15(A)(3). Due to the nature of our resolution of this case, we decide only a single issue: whether appellant was denied his right to be secure against unreasonable searches and seizures in violation of Article One, Section Eleven of the Indiana Constitution, and/or in violation of the Fourth and Fourteenth Amendments to the United States Constitution, when the trial court admitted evidence obtained in a warrantless search of appellant's car.

Between 9:00 and 9:15 a.m. on July 27, 1992, a man wearing a baseball cap and sunglasses who had a handkerchief over the lower part of his face approached pharmacist Stacey Kimmell at a Hook's Drug Store in Marion County and demanded money from the safe. Ms. Kimmell said that she did not have access to the safe. He responded, "Well, give me your other money, then." She gave him some money from the stamp drawer and he again asked about the safe. She reiterated her lack of access and he demanded more money. She gave him money and money orders from the money order drawer. He left with approximately $1,200.00, mostly in small bills. She waited a couple of minutes, then called the police; they arrived about ten minutes later. She described the robber as a 20–25 year old black man of light complexion who was approximately 5' 10" tall and weighed approximately 170 pounds.

Between 9:00 and 10:00 a.m. on July 27, 1992, Jerry Harms saw a maroon car coming out of the parking lot of the shopping center which includes the Hook's Drug Store that was robbed. The license plate was covered. Mr. Harms saw the car stop and a man matching appellant's description get out of it. That man removed something from the front of the car, then removed something that was covering the license plate. Mr. Harms gave

the license number, 97S9169, to a deputy sheriff at the robbery scene. Later, he conceded that the first number after the "S" could be a "7." He also subsequently identified the car as a 1977 or 1978 maroon Lincoln Versailles. Detective Smith checked relevantly similar license numbers and discovered that appellant's car was a possible match.

About 1:30 p.m. the following day, July 28, Detective Smith located appellant's vehicle near appellant's home at 2239 North College Avenue. Appellant's car is a 1977 burgundy Lincoln Versailles, license number 97S7169. Detective Smith believed that the car matched the description so he impounded and "inventory-searched" it. He found various pieces of incriminating evidence, including a baseball cap and more than $400.00 in small bills. Appellant arrived during the search and was arrested.

Appellant objected to the admission of those items obtained in the warrantless search of his car and filed a motion to suppress, but the trial court denied that motion. The trial court rejected appellant's federal and state constitutional arguments and concluded that Detective Smith's activities constituted a legitimate inventory search. The trial court granted Appellant's Petition for Interlocutory Appeal, but the Court of Appeals denied appellant's Petition to Accept Jurisdiction. At trial, appellant objected to the admission into evidence of those items seized in the warrantless search of his car. His objection was overruled.

■ Protection against unreasonable searches and seizures is one of the most essential constitutional rights. It holds a central place in both federal [1] and state [2] constitutional criminal procedure. A violation of the federal right occurs when a criminal trial court, over an appropriate objection by the defendant, admits evidence obtained in a search that neither possesses judicial sanction nor falls into one of the exceptions to the warrant requirement. A similar violation of the state right occurs when evidence is admitted that the State has obtained by means of an unreasonable search.

## I. Article One, Section Eleven

Appellant claims that the search violated his rights under Article One, Section Eleven of the Indiana Constitution.

■ The purpose of Article One, Section Eleven is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Moran v. State* (1994), Ind., 644 N.E.2d 536, 540. This Court considers, as the trial judge must, each case on its own facts to decide whether the police behavior was reasonable. The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Idol v. State* (1954), 233 Ind. 307, 313, 119 N.E.2d 428, 431. Automobiles are among the "effects" protected by Article One, Section Eleven. *Id.*, 119 N.E.2d at 431. When police activity results in an intrusion requiring justification, as it did in this case, evidence obtained in the process, upon proper objection, may not be admitted at trial unless the State has met its burden of showing that the intrusion was reasonable. Admissibility is lawful if the court can declare the process reasonable. The existence of a valid warrant to search and seize provides a preeminent form of support for a determination that the state standard of probable cause and reasonableness was met. The use of a valid warrant does not necessarily result in a search which is reasonable in the constitutional sense, and the failure to use a warrant does not necessarily result in a search which is unreasonable in the constitutional sense. The question here is whether, in the totality of these circumstances, reliance by the police upon their own informa-

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Ind. Const. art. I, § 11.

tion in deciding to search appellant's car was reasonable.

■ When the police entered and searched appellant's car it was 1:30 p.m. on July 28. A day had passed since the robbery under investigation had occurred. The police had no search warrant. The car was parked in a residential neighborhood and was surrounded by police cars. There was little likelihood that the car would be moved and thus lost to the police. There was neither a shortage of time nor an emergency. The police were not engaged in a community caretaking function. However, there existed but a minor discrepancy in the description of the car. With respect to automobiles generally, it may safely be said that Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion.[3]

■ Judicial approval makes it much more likely that the police are doing everything possible to make certain that the search is appropriate. Doing all that one can almost guarantees that one is behaving reasonably. When armed with probable cause, law enforcement officers are faced with a continuum of ostensibly reasonable activity, from doing nothing to search and seizure. Seeking a warrant is a means for them to reduce the risk that their proposed intrusive activity will fall outside that continuum, and that evidence will have to be suppressed in court. In addition, the warrant provides the individual being searched with the comfort of knowing some official other than the police officer performing the search has determined its propriety. State judges and magistrates with authority to issue warrants have received full legal educations. They often have had considerable experience in the practice of law; they are subject to the Code of Judicial Conduct. Moreover, judges and magistrates are generally politically answerable to their communities in ways that law enforcement officers are not and judicial officials are, therefore, more likely to understand the general mores regarding reasonable behavior.[4] This preference for warrants is based on the belief that a neutral and detached magistrate is more likely to be a fair evaluator of the relevant circumstances than the police officer actively involved in investigating a particular crime. The search of appellant's car in question in this case was unreasonable and our state constitution mandates that the evidence found as a result of such a search be suppressed. *See Callender v. State* (1922), 193 Ind. 91, 138 N.E. 817 (alcoholic beverages seized on the basis of improperly issued warrant not admissible at criminal trial). Only by such suppression can the privacy of all Hoosiers be adequately protected.

## II. The Fourth Amendment

Appellant argues that the warrantless search of his car also violated his rights under the Fourth Amendment of the United States Constitution.

■ The centerpiece of federal search and seizure jurisprudence is the warrant requirement of the Fourth Amendment. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d

---

3. Americans in general love their cars. It is, however, particularly important, in the state which hosts the Indy 500 automobile race, to recognize that cars are sources of pride, status, and identity that transcend their objective attributes. We are extremely hesitant to countenance their casual violation, even by law enforcement officers who are attempting to solve serious crimes.

4. In applying the *Fourth Amendment* the law continues to recognize an exigent circumstances exception to the warrant requirement, but that is not at issue. "One exception [to the warrant requirement] allows a warrantless search of a vehicle under exigent circumstances when the officer has probable cause to believe that the vehicle contains the fruits or instrumentalities of crime." *Murphy v. State* (1986), Ind., 499 N.E.2d 1077, 1081 (citations omitted). In applying Art. I, § 11, we would say that exigent circumstances may make a warrantless search of a vehicle reasonable. Here, there were no such circumstances. Of course, even under the Fourth Amendment a properly issued warrant does not guarantee that a search is reasonable. *See Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985).

576, 585 (1967) (footnotes omitted). The protection of the Fourth Amendment extends to a person's effects, which include automobiles, though to a lesser degree than it protects homes. *Cady v. Dombrowski*, 413 U.S. 433, 439–440, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706, 713–14 (1973). Once it has been shown that a search was conducted without a warrant, the burden shifts to the state to demonstrate that the search or seizure falls within one of the exceptions. *Fyock v. State* (1982), Ind., 436 N.E.2d 1089, 1094 (citing *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *reh'g denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969)). In evaluating the propriety of a warrantless search on appeal, the trial court's findings of fact are accepted unless clearly erroneous and the review of the conclusions of law is performed *de novo*.

■■■■ Here, the State claims that the warrantless search was permissible because it was performed pursuant to a routine inventory of the contents of the seized automobile. The State is correct that when a vehicle has been *properly* seized, it is subject to a warrantless search for the purpose of inventorying its contents. *Fair v. State* (1993), Ind., 627 N.E.2d 427, 431. The threshold question in inventory cases is whether the impoundment itself was proper. *Id.* The impoundment is, after all, a seizure, subject to constitutional limitations virtually identical to those governing a search.

The State seeks support from a recent U.S. Supreme Court case, *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The Supreme Court has held that when a vehicle is readily capable of being used on the highways, and is found stationary in a place not regularly used for residential purposes, two justifications for the vehicle exception to the search warrant come into play. First, the vehicle is readily mobile. Secondly, there is a reduced expectation of privacy in a motor vehicle stemming from its being subject to a range of police regulation inapplicable to a fixed dwelling. *Id.* at 392–93, 105 S.Ct. at 2070, 85 L.Ed.2d

at 414. It seems clear, and the *State* argues, that *Carney* applies where the vehicle *itself* is seized as evidence of a crime. *See* 3 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 7.3(a) (1985).

■■■ Although not with the result urged by the State, *Carney* disposes of this case. Since there were no exigent circumstances and appellant's automobile was located in a residential parking area, the automobile exception to the warrant requirement is not applicable. In addition, the State offers no argument that the police actions involved a community caretaking function such that the ordinary inventory search was permissible. Before performing a search or seizure police officers are *required* to obtain a warrant. Since the seizure occurred without a warrant and does not qualify under any of the various exceptions to that requirement, it violated the Fourth Amendment. The trial court erred in admitting into evidence items obtained in the subsequent inventory search, because warrantless inventory searches are only permitted when a vehicle has been properly impounded. Since appellant's vehicle was not properly impounded, and none of the other exceptions to the warrant requirement were applicable, we are not able to sustain the admission of the evidence.

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the conviction and remand to the trial court for further consistent proceedings.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

SULLIVAN, J., dissents and concurs with separate opinion.

SULLIVAN, Justice, concurring and dissenting.

By saying that the failure to use a warrant is not *per se* unreasonable, the majority departs from this court's long-standing interpretation of Article I, § 11, of the Indiana Constitution.[1] I dissent from this approach.

---

1. I acknowledge that the court recently emphasized the importance of the "reasonableness" requirement in examining whether police conduct in taking and examining trash put out for pickup violated Article I, § 1. *Moran v. State* (1994), Ind., 644 N.E.2d 536, 539–41. Upon

I recognize that recent suggestions from academia that the Fourth Amendment warrant requirement be replaced with a "reasonableness" test[2] reinforce this court's general willingness to explore new interpretations of our state Bill of Rights. *See generally* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind.L.Rev. 575 (1989). But twice within the last eighteen months we have reiterated that Article I, § 11 "mirrors the federal protection" against warrantless entry into the home for purposes of arrest or search. *Esquerdo v. State* (1994), Ind., 640 N.E.2d 1023, 1026; *Hawkins v. State* (1993), 626 N.E.2d 436, 438–39. And *Esquerdo* and *Hawkins* echo the decisions of this court prior to 1949, the year in which the Fourth Amendment became applicable to the states.[3] For example, in *Shuck v. State* (1945), 223 Ind. 155, 59 N.E.2d 124, we reversed a conviction for burglary on grounds that evidence obtained in a warrantless search had been admitted at trial. We said:

> Given the fact that the evidence was procured by search of the defendant's home in his absence and without his consent, only one other fact is material: Was there a search warrant? If not the inquiry is ended, the evidence inadmissible.

*Shuck*, 223 Ind. at 167, 59 N.E.2d at 129.

In my view, we would be well advised to follow precedent and not chart a new course that will cause substantial uncertainty both for police when they conduct criminal investigations and for defense counsel when they assess the admissibility of evidence. I also predict that this approach will require trial and appellate judges to make a whole new set of determinations as to whether this search or that is reasonable or not. These practical considerations are among the reasons why federal and Indiana courts have found warrant requirements in both the Fourth Amendment and Article 1, § 11. There is no reason to change that now.

In fact, after announcing that it is adopting a reasonableness test under Article I, § 11, the majority appears to decide today's case based not on whether the search was reasonable, but on the failure of the police to obtain a warrant. That is, *part I* of the majority's opinion suggests that the only thing that makes this particular search unreasonable is the absence of a warrant. The police had both an eyewitness description of the make, model, color, and approximate year of the getaway car and a virtual match as to the license plate. Under such circumstances, absent the warrant requirement, the search seems eminently reasonable.

The final paragraph of *part I* provides an eloquent rationale for the warrant requirement rather than an argument for a reasonableness test. I think that whether the search here was reasonable or not, the warrant requirement serves an extremely valuable purpose in providing a bright line for both law enforcement personnel and courts as to what evidence will be admissible and what evidence will be suppressed.

Because the warrant requirement was not complied with here, and because no exceptions therefrom were available (as the majority makes clear in *part II* ), I concur that the evidence seized in the automobile search should have been suppressed.

---

reflection, I believe the analysis contained in part I of that opinion was erroneous for essentially the same reasons I dissent today. However, I continue to concur in the result in *Moran*.

**2.** For examples of this criticism of the warrant requirement, *see* Akhil Reed Amar, *Fourth Amendment First Principles*, 107 Harv.L.Rev. 757 (1994) and Craig M. Bradley, *Two Models of the*

*Fourth Amendment*, 83 Mich.L.Rev. 1468 (1985). For an effective rebuttal, *see* Carol S. Steiker, *Second Thoughts About First Principles*, 107 Harv.L.Rev. 820 (1994).

**3.** *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).