**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 23 2014, 10:10 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DARREN BEDWELL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMAR WASHINGTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1405-CR-306 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1203-FA-17626

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jamar Washington appeals his conviction for dealing in cocaine as a class A felony. Washington raises one issue which we revise and restate as whether the trial court abused its discretion by admitting evidence found following a canine sniff. We affirm.

FACTS AND PROCEDURAL HISTORY

On March 15, 2012, Detective Ingram contacted Indianapolis Metropolitan Police Officer Luke Schmitt with respect to an investigation. Officer Schmitt was asked to perform a stop on Washington.[1] At some point that day, Officer Schmitt called Indianapolis Metropolitan Police Officer Scott Wildauer, a canine handler, and said that he was helping "Metro Drug" and that they were going to do a stop and asked for his assistance. Transcript at 54. Officer Schmitt initiated a traffic stop of Washington after observing him speeding and making an illegal lane change. Washington pulled over immediately. Less than thirty to forty seconds after the vehicles stopped, the camera in Officer Schmitt's vehicle began recording. The video recording begins with a time stamp of 4:17:44 p.m.[2]

Officer Schmitt approached Washington's vehicle and asked him a few questions regarding his license. Officer Wildauer arrived at the scene shortly after Officer Schmitt stopped Washington and appears on the video walking to Washington's vehicle and Officer Schmitt at 4:19:19. Officer Schmitt asked Washington to step out of the vehicle

---

[1] At the suppression hearing, the prosecutor asked Officer Schmitt: "So you were asked . . . by vice or the drug task force or whomever to get involved . . . and stop, if needed to, right, stop Mr. Washington?" Transcript at 27. Officer Schmitt responded affirmatively.

[2] The time stamp on the video is military time.

at some point for officer safety and "to get him out a way just – to the car so I could talk to him in the, in the back." Id. at 133-134. Washington complied, and Officer Schmitt patted him down for weapons and noticed a "big roll of money" in Washington's pocket but did not remove it. Id. at 163. Officer Schmitt then told Washington that he was going to run his license and do a computer check.

At approximately 4:20:20, Officer Schmitt returned to his vehicle, and Officer Wildauer engaged Washington in some general conversation including asking Washington what he did for a living. Officer Schmitt typed Washington's information into the computer in his vehicle to check Washington's license and registration and determine if he had any prior criminal history. At 4:21:03, 4:21:45, 4:23:03, 4:23:28, and 4:23:55, a computer voice message stated "message sent" relating to a request by Officer Schmitt for a license check. Id. at 137. Meanwhile at 4:22:42, dispatch informed Officer Schmitt that Washington was "negative," currently on probation, and had priors for dealing in cocaine and battery. State's Exhibit 1 at 4:22:43-44. Officer Schmitt did not receive a response from his computer because there were certain dead spots in the signal received by the computer. After not receiving a response, Officer Schmitt contacted control over his radio. Specifically, at 4:24:15, Officer Schmitt contacted dispatch, informed them that the computer was not working, and asked them to run the subject and check any priors. At 4:25:30, dispatch informed Officer Schmitt that there were no arrest warrants for Washington and that he had a valid driver's license. By 4:25:40, Officer Schmitt had Washington's criminal history and had run his license and registration.

At approximately 4:25:50, Officer Schmitt exited his vehicle and asked Washington if he had been arrested before and if there was cocaine in the car. He also asked for permission to search Washington's car, and Washington said no. At 4:26:06, Officer Schmitt asked Officer Wildauer if he had a dog and if he would conduct a sniff. Officer Schmitt later testified and characterized his asking Officer Wildauer to perform a dog sniff as "it was, hey you got your dog, mind while I'm writing this ticket." Transcript at 153. At 4:26:35, Officer Schmitt began talking to Washington with respect to his traffic violations. At 4:27:16, Officer Schmitt entered his car and began preparing a ticket for the traffic violations, and Officer Wildauer went to obtain his dog.

At approximately 4:27:33, Officer Wildauer deployed his dog. At that time, Officer Schmitt had not finished completing the electronic ticket. At approximately 4:28:02, Officer Wildauer's dog alerted for the odor of narcotics. Officer Wildauer told Officer Schmitt that his dog had made a positive indication, which meant that there was an odor of narcotics coming from the vehicle.

At approximately 4:28:34, Officer Schmitt exited his vehicle. At approximately 4:29:40, Officer Schmitt placed Washington in handcuffs. Officer Wildauer searched Washington's vehicle and discovered cocaine, a digital scale, and a razor blade in the center console, three cell phones in the passenger compartment of the vehicle, and a "shoe box . . . filled with bundles of money just laying there rubberbanded" in the trunk. Id. at 60.

At some point, Officer Schmitt completed writing Washington an electronic ticket for speeding and failure to signal a lane change. Officer Schmitt typically hands the

4

ticket to the violator, but gave the ticket to Detective Ingram because Washington was arrested for other offenses.

Officer Wildauer's dog later performed a sniff on storage facilities rented by Washington and positively indicated the odor of narcotics. The police obtained a search warrant, and no narcotics were found. The police later inventoried the vehicle and discovered a bag of crack cocaine hidden in the dashboard.

On March 20, 2012, the State charged Washington with dealing in cocaine as a class A felony and possession of cocaine as a class C felony. On September 11, 2013, Washington filed a motion to suppress and alleged that the evidence was obtained as a result of an illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

On October 4, 2013, the court held a hearing on Washington's motion to suppress. On October 23, 2013, the court denied Washington's motion to suppress and entered findings of fact and conclusions of law which states in part:

> **2. DURATION AND NATURE OF STOP AND CANINE SNIFF**
> Dog "sniffs" do not themselves trigger Constitutional protections, as they do not compromise any legitimate privacy interest, nor do they intrude on a Fourth Amendment privacy interest. Illinois v. [Caballes], 543 U.S. 405 (2005); Myers v. State[,] 839 N.E.2d 1146 (Ind. 2005). What may raise a constitutional claim is the duration of the "dog sniff" and whether [it] goes beyond the time required to write the traffic ticket. The Courts have ruled that a "dog sniff" must be initiated within the time it would take an officer to complete the mission of the underlying traffic stop. Id., at 407; State v. Gibson, 886 N.E.2d 639 (Ind. Ct. App. 2008). Also, it is not just the time it takes to write the ticket, or complete the mission of the traffic stop, it is whether the mission or, in this case, the ticket, was completed in a diligent, efficient matter, [sic] not delayed by the "dog sniff". "In assessing whether a detention is too long in duration, we

5

examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." Wilson v. State, 847 N.E.2d 1064, 1067 (Ind. Ct. App. 2006) *citing* Bradshaw v. State,[]759 N.E.2d 271, 273-74[] (Ind. Ct. App. 2001). In the case at hand, the court, having examined the timing of the traffic stop, through officer testimony and the video evidence, believes that the stop was conducted in an efficient diligent manner, and not done in such a way that the traffic stop's "mission", namely writing the traffic ticket (which involved checking the defendant's identity, driver's license, and running it through control), was extended or delayed due to the "dog sniff". From a pure timing standpoint, the "dog sniff" did not exceed the time used to pull over the defendant, remove him from the car, check his ID through control, and explain the ticket to the defendant. From an efficiency standpoint, the Court observed and heard no unreasonable actions in the traffic ticket writing process which would trigger suspicions of purposeful delay. The Court finds that the duration and nature of the stop and canine sniff passes the tests set forth by the U.S. and Indiana Constitutions, and federal and state case law.

Appellant's Appendix at 153-154.

On October 30, 2013, Washington filed a motion for certification of interlocutory order and for stay of proceedings pending appeal, and the court granted the motion. On January 14, 2014, this court denied Washington's motion to accept jurisdiction of an interlocutory appeal.

On March 21, 2014, the court held a bench trial. At the beginning of the trial, the court incorporated the evidence from the suppression hearing. Washington made a standing objection to the evidence obtained as a result of the search and seizure under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The court found Washington guilty of both counts but entered a judgment of conviction for only dealing in cocaine as a class A felony due to double jeopardy concerns. The court sentenced Washington to thirty years with twenty-seven

years executed in the Department of Correction and three years executed in community corrections.

## DISCUSSION

The issue is whether the trial court abused its discretion by admitting evidence found following the canine sniff. In reviewing the trial court's ruling on the admissibility of evidence from an allegedly illegal search, an appellate court does not reweigh the evidence but defers to the trial court's factual determinations unless clearly erroneous, views conflicting evidence most favorably to the ruling, and considers afresh any legal question of the constitutionality of a search or seizure. Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009). While this case contains a video recording of the stop, we note that the Indiana Supreme Court has observed that "[w]hile technology marches on, the appellate standard of review remains constant." Robinson v. State, 5 N.E.3d 362, 365 (Ind. 2014) (addressing the standard of review in a case in which the parties disputed the significance of video evidence).

Washington does not argue that the initial stop was improper. Rather, he argues that the police violated his constitutional right to freedom from unreasonable seizures under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution by delaying the traffic stop for a dog sniff. We will address his claims separately.

A.      Fourth Amendment

"It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." Austin v.

State, 997 N.E.2d 1027, 1034 (Ind. 2013). The use of narcotics sniffing dogs by police has been addressed by the United States Supreme Court. Deciding "[w]hether the Fourth Amendment requires reasonable, articulable suspicion to justify using a drug-detention dog to sniff a vehicle during a legitimate traffic stop," the Court declared that the use of a narcotics-detection dog "generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 407-409, 125 S. Ct. 834, 837-838 (2005). It reasoned that "[o]fficial conduct that does not compromise any legitimate interest in privacy is not a search subject to the Fourth Amendment," that "governmental conduct that *only* reveals the possession of contraband compromises no legitimate privacy interests," and that "the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable." Id. at 408-409, 125 S. Ct. at 837-838 (included quotations omitted). The Court held that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner . . . ." Id. at 408, 125 S. Ct. at 837. The Court did note, however, that a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407, 125 S. Ct. at 837. The burden is on the State to show the time for the traffic stop was not increased due to the canine sniff. Wells v. State, 922 N.E.2d 697, 700 (Ind. Ct. App. 2010), trans. denied. "An officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as the inquiries

8

do not measurably extend the stop's duration." Arizona v. Johnson, 555 U.S. 323, 325, 129 S. Ct. 781, 783 (2009).

The State concedes that it did not claim below that reasonable suspicion existed to detain Washington longer than necessary to complete the traffic stop. Thus, the question is whether the dog sniff was conducted in a manner that prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket.

Washington asserts that the State failed in its burden to show that the time for the traffic stop was not increased due to the canine sniff. The State argues that the traffic stop, which lasted just about eleven minutes prior to the canine indicating on his vehicle, is on all-fours with the length of stops that have consistently been found reasonable under the Fourth Amendment. It argues that the officers are allowed to ask questions that are not directly related to the traffic stop, and that the dog sniff did not extend the traffic stop and occurred simultaneously to Officer Schmitt's writing of the electronic ticket.

The record reveals that the video recording began thirty to forty seconds after the vehicles stopped and the recording shows a time stamp of 4:17:44. Officer Schmitt asked Washington a few questions and returned to his vehicle less than three minutes after the start of the video. His computer was in a dead spot and after four or five minutes of not receiving a response, he contacted control. At 4:25:30, dispatch informed Officer Schmitt that Washington had a valid driver's license. Officer Wildauer deployed his dog at 4:27:33, less than ten minutes after the beginning of the video and less than eleven minutes after the vehicles stopped. At this point, Officer Schmitt had not finished completing the electronic ticket. At approximately 4:28:02, Officer Wildauer's dog

9

indicated the presence of the odor of narcotics. While Officer Schmitt typically hands the traffic ticket to the violator, he had to give the ticket to Detective Ingram because Washington was arrested for the other offenses. Under the circumstances, we cannot say that the dog sniff or Officer Schmitt's actions were conducted in a manner that prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket. See Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005) (finding no error in the trial court's determination that the canine sniff test occurred while the traffic stop was ongoing, that is, while defendant was having the traffic citation explained to him); see also United States v. Carpenter, 406 F.3d 915, 916 (7th Cir. 2005) (holding that evidence was admissible where canine unit took no more than five minutes to arrive and did arrive while officer was giving defendant a ticket for evading red light); cf. Wells, 922 N.E.2d at 700-702 (holding that dog sniff and ensuing search were the result of an unconstitutional seizure where canine unit summoned only after officer obtained all information needed to write traffic ticket and canine unit arrived "nearly twenty minutes after [defendant's] traffic stop could have been completed and almost forty minutes after it began"); Wilson v. State, 847 N.E.2d 1064, 1066 (Ind. Ct. App. 2006) (holding that the trial court erred in denying the defendant's motion to suppress where warrant check was completed at 1:58 a.m., warning tickets were written at 2:06 a.m., and canine unit was summoned at 2:15 a.m., only after defendant declined consent to search car). Consequently, we cannot say that the trial court abused its discretion in admitting the evidence obtained after the stop.[3]

_____

[3] Washington argues that the facts of this case are like those in State v. Gray, 997 N.E.2d 1147

B.      Article 1, Section 11

Article 1, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated . . . ." While almost identical in wording to the federal Fourth Amendment, the Indiana Constitution's Search and Seizure clause is given an independent interpretation and application. Myers v. State, 839 N.E.2d 1146, 1153 (Ind. 2005). The purpose of this section is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. State v. Quirk, 842 N.E.2d 334, 339-340 (Ind. 2006). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. Id. at 340 (citing Brown v. State, 653 N.E.2d 77, 79 (Ind. 1995)). "In resolving challenges asserting a Section 11 violation, courts must consider the circumstances presented in each case to determine 'whether the police behavior was reasonable.'" Id. (quoting Brown, 653 N.E.2d at 79). We place the burden on the State to show that under the totality of the circumstances its intrusion was reasonable. Id. (citing State v. Bulington, 802 N.E.2d 435, 438 (Ind. 2004)).

A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the motorist is engaged in, or is about to

_____

(Ind. Ct. App. 2013), trans. denied, which addressed the Fourth Amendment, and emphasizes that Officer Wildauer and his dog were present for nearly the entire duration of the traffic stop and could easily have conducted a sniff earlier. To the extent Washington relies upon State v. Gray, we observe that the officer in Gray did not call a second officer to assist and chose to suspend the traffic stop in order to perform the canine sniff himself, there was no evidence that the officer ever wrote the defendant a ticket for a traffic violation, and the traffic stop was delayed by the dog sniff. 997 N.E.2d at 1152. Here, Officer Schmitt had a second officer at the scene with a dog available to perform a dog sniff while he wrote the ticket for the traffic violations; Officer Schmitt wrote a ticket; and the traffic stop was not delayed by the dog sniff. Thus, we find Gray distinguishable.

11

engage in, illegal activity. Quirk, 842 N.E.2d at 340 (citing Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001)). Section 11 permits an officer, during an investigatory stop, to detain a motorist briefly only as necessary to complete the officer's work related to the illegality for which the motorist was stopped. Id. (citing Mitchell, 745 N.E.2d at 788). Where an officer stops a vehicle for a traffic violation, a request for the driver's license and vehicle registration, a license plate check, a request to search the driver's vehicle and an inquiry regarding whether the driver has a weapon in the vehicle are within the scope of reasonable detention. Id. (citing Halsema v. State, 823 N.E.2d 668, 670-671 (Ind. 2005) (license plate check performed after traffic stop); Lockett v. State, 747 N.E.2d 539, 543 (Ind. 2001) (an officer may as a matter of routine practice ask a driver stopped for a traffic violation if he has a weapon in the vehicle or on his person), reh'g denied; Jones v. State, 655 N.E.2d 49, 52-53 (Ind. 1995) (after a traffic stop, officer requested driver's license and registration, asked the driver if the car and its contents belonged to him, and whether the officers could search the driver's car), reh'g denied). In analyzing a defendant's claim under Article 1, Section 11, the Indiana Supreme Court held that a dog sniff "is an unreasonable investigatory detention if the motorist is held for longer than necessary to complete the officer's work related to the traffic violation and the officer lacks reasonable suspicion that the motorist is engaged in criminal activity." Austin v. State, 997 N.E.2d 1027, 1034 (Ind. 2013).

Washington argues that the video shows that the traffic stop was delayed while Officer Schmitt gathered information about his prior arrests and for the dog sniff. He concedes that neither the Fourth Amendment nor the Indiana Constitution categorically

12

bars police officers from asking drivers about prior arrests or convictions, but points out that the decision to check his priors was special to this particular stop and contends that Officer Schmitt spent several minutes inquiring about his prior arrests, evidently in an effort to find an objectively reasonable justification for a dog sniff. He contends that, "[f]rom [4]:24:08 to [4]:25:51, [Officer] Schmitt was occupied on the terminal and radio in his squad car, gathering information about Washington's prior arrests for cocaine possession." Appellant's Brief at 13. The State argues that the eleven-minute traffic stop was reasonable both in scope and length.

As mentioned earlier, less than ten minutes after the beginning of the video and less than eleven minutes after the vehicles stopped, Officer Wildauer deployed his dog. At that point, Officer Schmitt had not finished completing the electronic ticket. While Officer Schmitt typically hands the traffic ticket to the violator, he had to give the ticket to Detective Ingram because Washington was arrested for the other offenses. To the extent Washington contends that Officer Schmitt was occupied gathering information about Washington's prior arrests for cocaine possession from 4:24:08 to 4:25:51, we observe that Officer Schmitt repeatedly attempted to send a message via the computer, contacted dispatch, and did not receive indication that Washington's license was valid until 4:25:27. Under the circumstances, we cannot say that Washington was held longer than necessary to complete the officer's work related to the traffic violation. Further, Officer Schmitt's questioning of Washington's criminal history did not extend the stop beyond the time necessary to complete the officer's work. We conclude that the officers'

actions did not constitute an unreasonable search or seizure under Article 1, § 11 of the

Indiana Constitution.[4]

CONCLUSION

For the foregoing reasons, we affirm Washington's conviction.

Affirmed.

BAILEY, J., and ROBB, J., concur.

---

[4] To the extent Washington argues that Officer Schmitt's decision to detain him while checking his criminal history is like the traffic stop in <u>Quirk</u>, we disagree. In that case, a trooper stopped Thomas Quirk because his headlight was out. <u>Id.</u> at 338. The trooper wrote Quirk a warning ticket and told him that he was free to leave. <u>Id.</u> at 339. The trooper then called to Quirk who was walking to his truck and said that he wanted to ask a few more questions. <u>Id.</u> Quirk consented to a search of the trailer portion of the truck and declined consent to search the cabin portion of the tractor. <u>Id.</u> The trooper once again allowed Quirk to leave, and Quirk entered his truck, drove into a rest area, exited the truck, and went inside the building to use the facilities. <u>Id.</u> As Quirk exited the building, the troopers informed him that although he was free to leave, the truck would have to remain. <u>Id.</u> Approximately twenty minutes later other officers began arriving on the scene with a canine unit, and the drug-sniffing dog alerted to the presence of a controlled substance in the cabin area of the tractor. <u>Id.</u> A subsequent search revealed a white powdery substance later identified as cocaine. <u>Id.</u> The trial court granted Quirk's motion to suppress the cocaine. <u>Id.</u> On appeal, the Court concluded that under the totality of the circumstances the troopers' detention of Quirk beyond the period necessary to issue a warning ticket and the subsequent search of his truck was unreasonable within the meaning of Article 1, Section 11. We find <u>Quirk</u> factually distinguishable.