Robert J. FOX, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 47A01–0303–CR–76.

Court of Appeals of Indiana.

Oct. 30, 2003.

Robert T. Miller, R.T. Miller & Associates, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellant-defendant Robert J. Fox, Jr., appeals the denial of his motion to suppress. We reverse.

### Issue

The dispositive issue is whether the warrantless search of Fox's vehicle was reasonable under Article I, Section 11 of the Indiana Constitution.

### Facts and Procedural History

At approximately 6:00 a.m. on March 31, 2000, as Bedford Police Officer Jon Eager drove her home at the end of her shift, Officer Raquel Ray stated that she had received information that a man was selling cocaine out of a gold pickup truck parked in a motel lot. Officer Eager subsequently drove by the motel, saw the truck in the parking lot, and reported this information to his shift commander, Major Dan Kirk. Officer Eager returned to the parking lot with an Officer Gilbert. Officer Michael Johnson arrived with a canine, which indicated the presence of narcotics in the locked and unoccupied truck. Officer Johnson saw white powder on the passenger seat and pointed this out to Major Kirk upon his arrival.

The officers ran a check of the truck's Connecticut license plate and determined that Fox was the registered owner. The officers also determined that Fox was staying at the motel. Officers Eager and Gilbert found Fox in his motel room and asked him to accompany them to the parking lot. Fox complied. Major Kirk asked Fox to unlock the truck. Fox stated that he wanted to speak to his attorney first. Major Kirk told the officers to use unlocking tools to enter the truck. As Officer

Gilbert attempted to do so, Fox pushed him and was arrested and handcuffed. Major Kirk retrieved Fox's keys and unlocked the truck. The white powder on the passenger seat field tested positive for cocaine.

Detective Drew Jackson had been monitoring radio traffic regarding this incident and arrived at the parking lot after the field test. Detective Jackson observed the test results and learned from Officer Johnson that the canine had indicated the presence of narcotics in the truck. Detective Jackson also learned that Fox was the registered owner of the truck and was staying at the motel. Detective Jackson then sought a search warrant for Fox's motel room and testified at a probable cause hearing as follows:

> A uniformed officer made a routine traffic stop of a gold pickup truck with out of state tags at 18th and "M". During the stop the officer noticed a white powdery substance in the passenger seat which was unoccupied at the time. He called for Officer Johnson and the canine. They did a[n] outside search, perimeter search of the truck. The dog hit on the passenger side. At that point we asked the driver to step out of the vehicle. He did so. When officers approached the driver's door he lunged at an officer, struck him, and was arrested. Field test of the white substance shows it to be cocaine.

Appellant's App. at 7.[1] Detective Jackson also testified that Fox was the owner of the truck and was staying at the motel. Based on this testimony, Judge Pro Tempore John M. Plummer, III, issued a warrant to search Fox's motel room for "[a]ny controlled substance, paraphernalia, docu-

ments, recording or otherwise reflecting illegal trafficking in a controlled substance and U.S. currency." *Id.* at 9. Police executed the warrant and found three packages of cocaine with a gross weight of 6.44 grams, a partially burned marijuana cigarette, and an additional 1.68 grams of marijuana.

The State charged Fox with Class A felony dealing in cocaine. The trial court denied Fox's motion to suppress the evidence seized from his truck and motel room and found him guilty as charged.[2] Fox now appeals.

## Discussion and Decision

 Fox first contends that the warrantless search of his truck was illegal under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution and that the cocaine seized during the search should have been suppressed. We need address only his Indiana constitutional argument. Our standard of review is well settled:

> The admissibility of evidence is within the sound discretion of the trial court and will be disturbed only upon a showing that the trial court abused its discretion. Upon review of a trial court's ruling on a motion to suppress and of subsequent admission of the challenged evidence, we must determine whether there is sufficient evidence of probative value in the record which supports the trial court's determination. Conflicting evidence will be considered in the light most favorable to the trial court's ruling. We will not reweigh evidence or judge witness credibility.

---

1. In its appellate brief, the State mistakenly asserts that Detective Jackson filed a search warrant affidavit. Appellee's Br. at 3.

2. In lieu of a hearing on Fox's motion to suppress, the parties submitted written memoranda.

*Justice v. State,* 765 N.E.2d 161, 164 (Ind. Ct.App.2002) (citations omitted), *clarified on reh'g,* 767 N.E.2d 995.

Article I, Section 11 of the Indiana Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

As our supreme court explained in *Brown v. State,* 653 N.E.2d 77 (Ind.1995),

> The purpose of Article One, Section Eleven is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. This Court considers, as the trial judge must, each case on its own facts to decide whether the police behavior was reasonable. The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. Automobiles are among the "effects" protected by Article One, Section Eleven. When police activity results in an intrusion requiring justification, as it did in this case, evidence obtained in the process, upon proper objection, may not be admitted at trial unless the State has met its burden of showing that the intrusion was reasonable. Admissibility is lawful if the court can declare the process reasonable. The existence of a valid warrant to search and seize provides a preeminent form of support for a determination that the state standard of probable cause and reasonableness was met. The use of a valid warrant does not necessarily result in a search which is reasonable in the constitutional sense, and the failure to use a warrant does not necessarily re-

sult in a search which is unreasonable in the constitutional sense. The question here is whether, in the totality of the circumstances, reliance by the police upon their own information in deciding to search appellant's car was reasonable.

> . . . .

> Judicial approval makes it much more likely that the police are doing everything possible to make certain that the search is appropriate. Doing all that one can almost guarantees that one is behaving reasonably. When armed with probable cause, law enforcement officers are faced with a continuum of ostensibly reasonable activity, from doing nothing to search and seizure. Seeking a warrant is a means for them to reduce the risk that their proposed intrusive activity will fall outside that continuum, and that evidence will have to be suppressed in court. In addition, the warrant provides the individual being searched with the comfort of knowing some official other than the police officer performing the search has determined its propriety. State judges and magistrates with authority to issue warrants have received full legal educations. They often have had considerable experience in the practice of law; they are subject to the Code of Judicial Conduct. Moreover, judges and magistrates are generally politically answerable to their communities in ways that law enforcement officers are not and judicial officials are, therefore, more likely to understand the general mores regarding reasonable behavior. This preference for warrants is based on the belief that a neutral and detached magistrate is more likely to be a fair evaluator of the relevant circumstances than the police officer actively involved in investigating a particular crime.

*Id.* at 79–80 (citations and footnotes omitted).

■ The State bears the burden of demonstrating that, in the totality of the circumstances, the intrusion was reasonable. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind.2001). In its attempt to meet this burden, the State relies solely on *Justice*, in which we determined that the warrantless seizure of stolen items in open view in the defendant's car shortly after a reported burglary was reasonable given the totality of the circumstances. *Justice*, 765 N.E.2d at 167.[3] As the *Justice* court noted, however, the car the defendant was driving "had been stopped at the public entrance/exit to the apartment complex and thus, the car was in a public thoroughfare." *Id.* Here, Fox's unoccupied truck was locked and parked in a motel lot and flanked by several police officers and a canine. Shortly after the officers searched the truck, Detective Jackson was able to obtain a search warrant for Fox's motel room. Given the totality of these circumstances, we conclude that the warrantless search of Fox's truck was unreasonable and that the cocaine seized during the search should have been suppressed. *See Brown*, 653 N.E.2d at 80 (concluding that warrantless search of robbery suspect's unoccupied car near his home one day after robbery was unreasonable and that evidence seized during search must be suppressed: "The car was parked in a residential neighborhood and was surrounded by police cars. There was little likelihood that the car would be moved and thus lost to the police. There was neither a shortage of time nor an emergency.").

■ Fox also contends that the evidence seized during the search of his motel room should have been suppressed. "[I]f an otherwise legitimate search occurs only because of the discovery of drugs during an illegal search and seizure, any evidence discovered in the subsequent search must also be suppressed as fruit of the poisonous tree." *Jett v. State*, 716 N.E.2d 69, 71 (Ind.Ct.App.1999). The search of Fox's motel room occurred only because of the discovery of cocaine during an illegal search of his truck; thus, even assuming that the search of the motel room was otherwise legitimate, the evidence discovered during the search should have been suppressed.[4] We therefore reverse the trial court's denial of Fox's motion to suppress.

Reversed.

BAKER, J., and SHARPNACK, J., concur.

---

3. The *Justice* court explained that the "open view" doctrine applies

> in situations in which a law enforcement officer sees contraband from an area that is not constitutionally protected, but rather is in a place where the officer is lawfully entitled to be. In such situations, anything that is within "open view" may be observed without having to obtain a search warrant because making such "open view" observations do[es] not constitute a search in the constitutional sense. Nonetheless, in order to lawfully seize items in "open view," it may be necessary to obtain a search warrant or be able to justify a warrantless seizure under an exception to the [Fourth Amendment's] warrant requirement.

*Justice*, 765 N.E.2d at 165 (citations omitted); *see also Peterson v. State*, 674 N.E.2d 528, 535 (Ind.1996) ("[U]nder [Article I,] Section 11, police observation of an item in open view is not a search."), *cert. denied* (1998).

4. Consequently, we do not address the State's argument that the evidence was admissible under the good faith exception to the exclusionary rule.