Robert BELL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0401–CR–27.

Court of Appeals of Indiana.

Nov. 30, 2004.

Rehearing Denied Feb. 3, 2005.

Jeffrey A. Baldwin, Baldwin & Dakich, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

DARDEN, Judge.

### STATEMENT OF THE CASE

Robert Bell (Bell) appeals the trial court's denial of his motion to suppress.[1]

We reverse.

### ISSUE

Whether Bell's constitutional rights against unreasonable search and seizure were violated.

### FACTS

On December 12, 2002, in Indianapolis, Bell was driving his vehicle with Earl Sharp (Sharp) as his passenger. Deputy Steve Rivers (Rivers) a uniformed patrol officer with the Marion County Sheriff's Department stopped Bell allegedly "for investigative purposes" of Sharp on the instructions of narcotics detective, Sergeant Mahone (Mahone) of the Marion County Sheriff's Department. (Tr. 31). Mahone ordered the vehicle stopped because, at the time, he possessed a search warrant for the purpose of searching the home of Sharp; but, he also indicated that it was his intention to effectuate "an outright arrest" of Sharp, on other matters. (Tr. 13). Rivers stopped Bell's vehicle "in approximately the 4200 block of West 42nd Street." (Tr. 31). Rivers obtained the identity of both Bell and Sharp. Bell had a valid driver's license and there were no

---

1. Oral argument was heard on October 13, 2004 and we want to thank counsel for their presentations.

outstanding warrants for his arrest. Rivers "took them both into custody and placed them in handcuffs." (Tr. 31). After being placed in handcuffs and patted down, they were placed in separate police vehicles.

At that point, Bell was asked if there were any weapons in his vehicle. Bell stated there was a gun "beside his driver seat" and that he had a permit to carry a weapon. (Tr. 32). Rivers "recovered a 9mm Rigger Pistol" where Bell indicated that it would be located. *Id.*

Bell testified that he told the deputies that the gun permit was in his wallet, but that the deputies did not check the wallet. Mahone testified that the wallet was searched, but he found no permit. However, the ensuing evidence is not in dispute. Bell was handcuffed, patted down allegedly for officer safety and secured in a police vehicle. After being placed in handcuffs, the handcuffs were never removed to allow Bell to produce the permit he said was in his wallet. There was no evidence of an emergency, continued threat to the deputies, or danger to the community. Additionally, there were several deputies at the scene. Furthermore, there was no effort made by Mahone or the other deputies to verify with the State Police whether Bell had a valid permit to carry a firearm. At this point, Bell was arrested for allegedly carrying a handgun without a license.

After Bell and Sharp were seated in separate police vehicles, the immediate area where Sharp was seated was searched and no contraband was found. Thereafter, Bell's entire vehicle was searched at the scene of the stop. Subsequently, the glove box of his vehicle was dismantled, enabling the officers to look behind the glove box and into the chassis of the vehicle. There, a Crown Royal bag was discovered which contained suspected cocaine. The substance was later tested and confirmed to be positive for cocaine.

The next day, on December 13, 2002, Bell was charged with Count 1, dealing in cocaine, as a class A felony; Count 2, possession of cocaine, as a class C felony; and Count 3, possession of cocaine and a firearm, a class C felony, only.[2] Bell was not charged with carrying a handgun without a license, for it was determined through Mahone that he had a valid handgun license from the State Police.

On May 15, 2003, Bell filed a motion to suppress the evidence challenging the stop and search under both the federal and state constitutions. A hearing was held on that motion on October 10, 2003. Bell gave unrefuted testimony that when he was released from jail on bond, his personal items were returned to him. He further testified that the gun permit was in his wallet. A copy of the gun permit was later introduced as an exhibit at the suppression hearing. The matter was taken under advisement. On October 24, 2003, the trial court issued its ruling denying Bell's motion to suppress. The ruling contained findings of fact and conclusions of law. The trial court determined, among other things, that there was "an evidentiary dispute as to whether [Bell] had the permit on him," but that the trial court did not need to "resolve that dispute."[3] (App. 91).

---

2. At oral argument, the State argued that because of the known drug trafficking of Sharp, the officers had the right to search the vehicle for evidence of Sharp's criminality.

3. This court finds it curious that the trial court did not rule on the issue of whether Bell had a valid gun permit, as that served as a basis for the arrest and subsequent search of both Bell and his vehicle. It is not disputed that Bell told the officers he had a valid gun permit. And, it is also undisputed that the permit was in Bell's wallet when he retrieved his belongings from the jail. Subsequently,

The trial court held that the evidence was admissible because after the arrest of Sharp, the officers were allowed to search the passenger compartment, and the area behind the glove box was part of that compartment. Bell filed a motion to certify the denial of the motion to suppress for interlocutory appeals, and it was granted by the trial court.

## DISCUSSION

 Our standard of review of a denial of a motion to suppress is similar to sufficiency of evidence matters. *Ware v. State,* 782 N.E.2d 478, 481 (Ind.Ct.App. 2003). We will not "reweigh the evidence or judge the credibility of witnesses but instead consider all uncontroverted evidence together with the conflicting evidence that supports the trial court's decision." *Id.* However, we also "consider the uncontested evidence favorable to the defendant." *Id.* Also, due to the unique protections provided in the Indiana Constitution, we must review the totality of the circumstances thereby requiring this court to review all the facts and circumstances that are particular to this case. *State v. Moore,* 796 N.E.2d 764, 767 (Ind.Ct.App. 2003).

 Both the Fourth Amendment of the United States Constitution and the Constitution of the State of Indiana protect citizens against unreasonable search and seizures by the government. In almost identical language they essentially provide:

The right of the people to be secure in their persons, houses, papers, and ef-

fects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

U.S. Const. Amend. IV, IND. Const. Art. 1 § 11. The dual protections of both Constitutions place the burden upon the State to establish a valid warrant or prove a warrant exception. Nevertheless, pursuant to interpretation of Indiana's Constitution, the citizens of Indiana enjoy a distinct and higher level of protection than that provided by the federal constitution. *Mast v. State,* 809 N.E.2d 415, 419 (Ind.Ct.App. 2004). Additionally, under § 11 of Art. 1 of the Indiana Constitution, the State must also prove that "under the totality of the circumstances its intrusion was reasonable." *Id.* (citing *Brown v. State,* 653 N.E.2d 77 (Ind.1995)). "Searches conducted without a warrant are per se unreasonable subject to a few well delineated exceptions." *Johnson v. State,* 766 N.E.2d 426, 432 (Ind.Ct.App.2002).

 In its brief, the State argues that under both the United States and Indiana Constitutions, the search of Bell's vehicle was incident to the lawful arrest of either Bell or Sharp, a recognized warrant exception, pursuant to *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). However, during oral argument, the State abandoned its position that the search was incidental to the lawful arrest of Bell and argued only as to Sharp.[4] Therefore, we will hold the State to its

---

Bell was not charged with the offense of carrying a handgun without a license.

4. During oral argument, the State further asserted that concern for officer safety was another basis for the search of Bell's vehicle. This point was neither raised by the State at the trial court level nor in its brief. The

officers did not testify to concerns of their safety. Both Bell and Sharp were immediately patted down, handcuffed and placed in separate police vehicles after the stop. Moreover, the weapon belonging to Bell was located immediately upon entry to his vehicle by Rivers where Bell said it would be located.

position that the search was reasonable only based on the lawful arrest of Sharp.

In the *Belton* case, the United States Supreme Court held that law enforcement officers could search the passenger compartment of a vehicle incident to a lawful arrest. *Id.* at 460, 101 S.Ct. 2860. The State argued at oral argument that the arrest of Sharp allowed the officers to search the entire passenger compartment of the vehicle, including "closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *White v. State,* 772 N.E.2d 408, 411 (Ind.2002) (quoting *Belton,* 453 U.S. at 460, 101 S.Ct. 2860).

The Court in *Belton* was concerned with providing clarity to the lower courts, which were struggling with "the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Belton,* 453 U.S. at 460, 101 S.Ct. 2860. In attempting to establish proper search parameters, *Belton* provided an extensive list of appropriate places to search. *See Id.* We agree with the parameters and the underlying analysis in *Belton* that support the places to search. However, *Belton* cannot be stretched to the extent argued by the State to support its position.

In the present case, with the arrest of Sharp, the officers did not stop with merely searching the immediate area where Sharp was seated, the opening and searching of the closed glove box, consoles, receptacles, luggage, boxes and bags found within the vehicle's passenger compartment, which would have been permissible under *Belton;* but, rather they dismantled the glove box to view behind it into the vehicle's chassis. If we accept the State's argument, it would extend *Belton* from not only allowing the police to search the passenger compartment of a vehicle without a search warrant after an arrest, but it would allow the dismantling of the interior structures of vehicles without the benefit of a search warrant. While a search incident to arrest is a valid warrant exception, the officers' search in this case exceeded the permissible scope, as outlined in *Belton.* Therefore, we find that Bell's Fourth Amendment rights against unlawful search and seizure were violated.

■ Next, the State argues that the search was reasonable under the Indiana Constitution because the search was incident to an arrest. In support of this argument, the State directs our attention to *Leitch v. State,* 736 N.E.2d 1284, 1286, *trans. denied* (Ind.Ct.App.2000) and *Strangeway v. State,* 720 N.E.2d 724, 727 (Ind.Ct.App.1999). Leitch was lawfully placed under arrest and narcotics were found in his glove compartment. *Leitch,* 736 N.E.2d at 1286. Leitch challenged the denial of his motion to suppress. *Id.* We cited *Belton,* and we held that upon a lawful custodial arrest, an officer could search the passenger compartment of a vehicle. *Id.* at 1286. *Strangeway* establishes the same principle. *See Strangeway v. State,* 720 N.E.2d at 727. However, neither *Leitch* nor *Strangeway* support the State's position that the dismantling of the glove compartment in this case would consider to be reasonable under the totality of the circumstances.

■ The purpose of Indiana's Constitution, Article I, § 11, is "to protect from unreasonable police activity those areas of life that Hoosiers regard as private." *Scott v. State,* 775 N.E.2d 1207, 1211 (Ind. Ct.App.2002) (citing *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995)). In general, "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Id.* Therefore, "In deciding whether a warrantless search

and seizure violates Article One, section eleven, we must determine whether, under the totality of the circumstances, the warrantless search" of Bell's car was unreasonable. *Scott,* 775 N.E.2d at 1211.

The evidence is undisputed that both Bell and Sharp were immediately removed from the vehicle, handcuffed, patted down and placed in separate police vehicles. Also, Bell's weapon was retrieved *before* the officers commenced the search of his vehicle. Moreover, a search of the open area of the passenger compartment and inside of the glove compartment revealed no contraband. Still, without the benefit of a search warrant, the officers then proceeded to dismantle the vehicle's glove box and searched inside the vehicle's chassis. It is at this point that we find that the officers' search exceeded the bounds of reasonableness in Indiana. Based upon the facts and circumstances of this case, we do not believe that citizens of Indiana would countenance this type of warrantless search that occurred here. As a result, we find that under the totality of the circumstances, the search was unreasonable and the motion to suppress should have been granted. *See Fox v. State,* 797 N.E.2d 1173, 1177 (Ind.Ct.App.2003).

We reverse the trial court and order the drugs found in the chassis of Bell's vehicle suppressed.

BAKER, J., and FRIEDLANDER, J., concur.