

I N T H E

# Court of Appeals of Indiana

Joseph Lee Young,

*Appellant-Defendant*



FILED

Oct 04 2024, 9:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

October 4, 2024

Court of Appeals Case No.
23A-CR-2544

Appeal from the Johnson Superior Court

The Honorable Douglas B. Cummins, Judge

Trial Court Cause No.
41D03-2303-F2-16

**Opinion by Judge May**
Judges Brown and Foley concur.

**May, Judge.**

Joseph Lee Young appeals following his convictions of Level 2 felony dealing methamphetamine in an amount of ten grams or more[1] and Level 6 felony unlawful possession of a syringe[2] and his adjudication as a habitual offender.[3] Young presents four issues for our review, which we revise, restate, and reorder as:

> 1. Whether the warrantless search of Young's vehicle, which included looking inside a loose door panel, violated Young's rights under:
>
> > 1.1. the Fourth Amendment of the United States Constitution; or
> >
> > 1.2. Article 1, section 11 of the Indiana Constitution;
>
> 2. Whether the trial court abused its discretion when it ruled that the State established an adequate chain of custody to support admission of the items law enforcement collected during the search of Young's vehicle;
>
> 3. Whether the State presented sufficient evidence to sustain Young's convictions; and

---

[1] Ind. Code § 35-48-4-1.1(e) (2017).

[2] Ind. Code § 16-42-19-18 (2015).

[3] Ind. Code § 35-50-2-8 (2017).

4. Whether Young's aggregate thirty-five-year sentence is inappropriate in light of the nature of his offenses and his character.

We affirm.

## Facts and Procedural History[4]

On March 8, 2023, Franklin Police Department ("FPD") officers conducted long-range surveillance of Young because there was an outstanding warrant for Young's arrest. The officers observed Young sitting in the front seat of a Chevrolet Trailblazer while it was parked on the street outside of Young's residence, and after Young sat in the car for about an hour, Detective Kody Martin of the FPD parked his patrol vehicle behind the Trailblazer, ordered Young out of the vehicle, and handcuffed Young. Detective Martin conducted a pat down search of Young and found approximately half a gram of a substance later determined to be methamphetamine and a substance Detective Martin believed was marijuana.

Multiple other law enforcement officers arrived at the scene including Lieutenant Christopher Tennell of the FPD and Detective Andrew Eggebrecht, a K-9 officer with the Johnson County Sheriff's Office. Detective Eggebrecht

---

[4] We heard oral argument in this case on Constitution Day, September 17, 2024, at the University of Evansville. We commend counsel for their advocacy and thank University of Evansville President Christopher Pietruszkiewicz as well as the university's faculty, staff, and students for their warm reception and hospitality.

used his police dog to perform a free air sniff around the Trailblazer. The police dog gave a positive indication near the rear passenger-side door of the vehicle, so Detective Eggebrecht and Detective Martin searched the vehicle, while Lieutenant Tennell stood with Young. Detective Eggebrecht searched the area near the rear passenger-side door and found a "marijuana-branded tray that had residue on it." (Tr. Vol. 2 at 234.) There were tools and wires scattered throughout the vehicle and the center console had been disassembled. As the officers were searching near the driver's door, Lieutenant Tennell noticed that Young's behavior changed. Young had been ignoring the search, but Young became more attentive at that point. Detective Eggebrecht found "a magnetic box" near the vehicle's instrument cluster "stuck on the side of it where there was an air vent that was missing." (*Id*. at 234-35.) The officers found red baggies, marijuana cigarettes, and a pipe inside the magnetic box.

[4]     The officers continued searching the vehicle and Detective Martin noticed the plastic interior door panel of the driver's door moved away from the door and was "super loose." (Ex. 1 at 24:04-:06.) Detective Eggebrecht noticed "there was a plastic clip that was holding the bottom of that door panel in rather than the normal number of clips that hold it all the way around the perimeter." (Tr. Vol. 2 at 236.) Detective Martin pulled the loose plastic panel away from the door and a bag containing approximately nineteen grams of methamphetamine, small baggies with methamphetamine inside them, a scale, a latex band, syringes, and numerous unused plastic baggies fell out. The officers then used

their fingers to unscrew the door panel, but they did not find any additional evidence secreted behind the door panel.

[5] Detective Martin sorted the evidence at the scene and placed it into plastic bags. He then transported the evidence to FPD headquarters. Detective Martin gave the evidence to FPD Detective Jess Harris. Detective Harris tagged each bag of evidence with the case number and an item number, initialed and dated each bag, and placed the bags into an evidence locker used for temporary storage. The evidence technician was the only person who could retrieve the bags from the evidence locker.

[6] On March 14, 2023, the State charged Young with Level 2 felony dealing in methamphetamine and Level 6 felony unlawful possession of a syringe. Evidence Technician Mark Riley removed the bagged evidence from the evidence locker on March 16, 2023, processed the evidence, and then stored the evidence in the FPD's secure property room. On June 16, 2023, the State filed an information alleging Young qualified for a habitual offender sentence enhancement.

[7] On July 20, 2023, Young moved to suppress the narcotics and syringes found inside his vehicle alleging the search of his vehicle was unconstitutional. The trial court held a hearing on Young's motion on July 21, 2023. During the hearing, Young explained he was not seeking to suppress evidence of the drugs found on his person or in the magnetic black box found near the instrument cluster. He clarified that he was only seeking to suppress the evidence found

inside the door panel. Young argued that taking apart the door was an "invasive search" that required a warrant. (*Id*. at 43.)

[8] On July 24, 2023, the trial court issued an order denying Young's motion to suppress. The trial court ruled that a warrant was unnecessary because of the automobile exception to the warrant requirement. The trial court noted that the vehicle was in a public place and was operational. In addition, the police had already arrested Young and were preparing to take him to jail. The trial court also ruled that removal of the loose door panel did not exceed the scope of a lawful warrantless search: "Having found the rolling tray where [the police dog] indicated and the partially hidden metal box containing additional narcotics, noticing that the door panel was only secured by a single screw gave rise to the officer's suspicion that additional illegal substances may be hidden in that compartment[.]" (App. Vol. 2 at 61.)

[9] The trial court held Young's jury trial from August 8, 2023, to August 10, 2023. During Detective Martin's testimony, Young objected to admission of the portion of Detective Martin's bodycam footage that showed him pulling on the loose interior door panel on the basis that that portion of the search was unconstitutional, but the trial court overruled Young's objection. Young further objected on the same basis when the State sought to admit the evidence discovered inside the loose door panel, and the trial court overruled each of Young's objections. Dakota Altepeter testified he sold the Trailblazer at issue to Young in January 2023, he cleaned out the vehicle before attempting to sell it, the door panel was not loose at that time, and there were no illegal drugs in

the vehicle when he sold it. In addition, the State entered into evidence several recordings of phone calls Young had made while incarcerated in the Johnson County Jail. During these phone calls, Young stated officers "found all my shit," "they got me with an ounce almost . . . yeah they got me," and that he knew he "did this[.]" (Ex. 19 at 1:27-29; Ex. 20 at 1:23-30; Ex. 22 at 00:33-36). The jury found Young guilty of both Level 2 felony dealing in methamphetamine and Level 6 felony unlawful possession of a syringe. After the jury read its verdict, Young pled guilty to the habitual offender sentence enhancement.

[10] On September 25, 2023, the trial court held Young's sentencing hearing. The trial court found Young's criminal history and Young's commission of these offenses while on bond to be aggravating circumstances. The trial court noted Young seemed remorseful but stated "I can't give you any credit for being remorseful at this point because it's one thing to be remorseful before your sentence and another thing to sit there and go I'm lookin' at 50 years and now I'm really remorseful." (Tr. Vol. 3 at 152.) The trial court also observed that Young twice had been ordered to receive drug treatment but continued to abuse drugs. The trial court found as a mitigating factor that Young pled guilty in two other cases and that Young pled guilty to the habitual offender enhancement in the instant case. For Young's Level 2 felony dealing in methamphetamine conviction, the trial court sentenced Young to twenty-five years and enhanced that sentence by ten years because of the habitual offender finding. The trial court also sentenced Young to a term of one year for his Level 6 felony

unlawful possession of a syringe conviction. The trial court ordered Young to serve the sentences concurrently for an aggregate term of thirty-five years. The trial court also recommended that Young participate in the Recovery While Incarcerated program and stated "I'm gonna give you a chance to modify at some point." (*Id.* at 154.)

# Discussion and Decision

## 1. Vehicle Search

[11] Young contends the officers' search of his vehicle violated his rights under both the Fourth Amendment of the United States Constitution[5] and Article 1, section 11 of the Indiana Constitution.[6] He asserts "the police's action in dismantling Young's vehicle and conducting a warrantless search of it was unreasonable." (Appellant's Br. at 9.) While Young filed a motion to suppress challenging the constitutionality of the vehicle search prior to trial, which the

---

[5] The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[6] Article 1, section 11 of the Indiana Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

trial court denied, he subsequently proceeded to trial and renewed his objection to the constitutionality of the search at trial. Therefore, Young's "appeal is best framed as challenging the admission of evidence at trial." *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013).

[12] We generally review a trial court's decision regarding the admission of evidence at trial for an abuse of discretion. *Id*. at 260. An abuse of discretion occurs when the trial court's decision "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id*. "When, however, admissibility turns on questions of constitutionality relating to the search and seizure of that evidence, our review is de novo." *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017).

## 1.1 Fourth Amendment

[13] Young asserts the officers "exceeded the bounds" of the Fourth Amendment "by dismantling the door panel." (Appellant's Br. at 15.) The Fourth Amendment protects citizens from search or seizure absent a warrant supported by probable cause unless a well-delineated exception to the warrant requirement applies. *Tigner v. State*, 142 N.E.3d 1064, 1068 (Ind. Ct. App. 2020). "The State bears the burden of proving that an exception to the warrant requirement applies for evidence obtained during a warrantless search to be admissible at trial." *Id*. One such exception to the warrant requirement is the automobile exception, which our Indiana Supreme Court discussed in *State v. Hobbs*:

> The 'automobile exception' to the warrant requirement allows
> police to search a vehicle without obtaining a warrant if they
> have probable cause to believe evidence of a crime will be found
> in the vehicle. This doctrine is grounded in two notions: 1) a
> vehicle is readily moved and therefore the evidence may
> disappear while a warrant is being obtained, and 2) citizens have
> lower expectations of privacy in their vehicles than in their
> homes. One reason for this diminished expectation of privacy in
> a car and its contents is that cars travel along public highways
> and are subject to pervasive government regulation.

933 N.E.2d 1281, 1285 (Ind. 2010) (internal citations omitted).

[14] A search pursuant to the automobile exception "is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *U.S. v. Ross*, 456 U.S. 798, 824 (1982). The scope of a search pursuant to the automobile exception "is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id*. at 825. This includes the contents of closed containers inside the vehicle. *California v. Acevedo*, 500 U.S. 565, 580-81 (1991). "When there is probable cause to search for contraband in a car, it is reasonable for police officers . . . to examine packages and containers without a showing of individualized probable cause for each one." *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999).

[15] Young argues the officers at the scene "should not have dismantled the door panel of the vehicle without a search warrant," (Appellant's Br. at 15), and he likens his case to *Bell v. State*, 818 N.E.2d 481 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*. In *Bell*, the police conducted a traffic stop of Bell's vehicle because Bell's passenger had an outstanding warrant for his arrest. *Id*. at 482. The officers handcuffed Bell and his passenger and placed them in separate police cruisers. *Id*. at 483. The officers then searched Bell's vehicle. *Id*. During the search, the officers "dismantled" Bell's glove compartment "enabling the officers to look behind the glove box and into the chassis of the vehicle." *Id*. The officers found a bag of cocaine inside the vehicle's chassis. *Id*.

[16] Bell filed a motion to suppress arguing that the search of his car was unconstitutional, and the trial court denied Bell's motion. *Id*. at 483-84. The State argued on appeal that the warrantless search of Bell's vehicle fell within the Fourth Amendment's search incident to arrest exception because it followed the arrest of Bell's passenger. *Id*. at 484-85. We held the search was unconstitutional because it went beyond "the opening and searching of the closed glove box, consoles, receptacles, luggage, boxes and bags found within the vehicle's passenger compartment," the officers "dismantled the glove box to view behind it into the vehicle's chassis." *Id*. at 485.

[17] However, *Bell* is readily distinguishable from the instant case. Whereas the officers in *Bell* exceeded the scope of a lawful warrantless search incident to arrest by searching beyond the immediate area where Bell's passenger was seated, *id*. at 485, the officers who searched Young's vehicle did not exceed the

scope of a lawful search pursuant to the automobile exception. "Where there is probable cause to search a vehicle, a search is not unreasonable if it is based on facts that would justify the issuance of a warrant, even though a warrant has not been obtained." *Meister v. State*, 933 N.E.2d 875, 879 (Ind. 2010). "Probable cause to issue a search warrant exists where the facts and circumstances would lead a reasonably prudent person to believe that a search would uncover evidence of a crime." *Id.*

[18] Before Detective Martin pulled on the loose door panel, the police had found drugs on Young's person, a police dog had alerted to the presence of drugs inside Young's vehicle, the officers had found a marijuana-branded rolling tray near the rear passenger-side door, and the officers had also found a magnetic box containing narcotics and paraphernalia secreted inside a dismantled air vent near the vehicle's instrument cluster. Moreover, prior to police arriving, the vehicle's center console had been disassembled, and there were wires and tools scattered over the two front seats of the vehicle. Thus, a reasonably prudent person could conclude additional drugs could be hidden behind a loose door panel. Because probable cause existed to justify looking behind the door panel, Detective Martin's act of pulling on the loose door panel did not violate Young's rights under the Fourth Amendment.[7] *See, e.g.*, *Cheatham v. State*, 819

---

[7] Young also asserts on appeal that the search did not fall within the search incident to arrest exception to the Fourth Amendment warrant requirement and that "[a]s for any alleged probable cause established by the canine, the search was unreasonable because the purpose of the stop was complete prior to the dog sniff." (Appellant's Br. at 18.) However, Young did not raise these arguments before the trial court, and therefore,

N.E.2d 71, 76 (Ind. Ct. App. 2004) (holding probable cause existed to justify search of defendant's car pursuant to the automobile exception when officers observed rolling papers in plain view and smelled the odor of marijuana, and a police dog alerted to the presence of narcotics in the vehicle).

## 1.2 Article 1, section 11

[19] Young also argues the search was unreasonable under Article 1, section 11 of the Indiana Constitution. While the text of Article 1, section 11 is nearly identical to the text of the Fourth Amendment to the United States Constitution, "we evaluate a search under our state constitution based on the reasonableness of the conduct of the law enforcement officers under the circumstances, rather than on the expectation of privacy that is commonly associated with analysis under the Fourth Amendment." *State v. Jones*, 191 N.E.3d 878, 891 (Ind. Ct. App. 2022) (quotation marks omitted), *trans. denied*. We evaluate whether a search is unconstitutional under the Indiana Constitution by balancing three factors: "1) the degree of concern, suspicion, or

---

he is precluded from raising them for the first time on appeal. *See Finnegan v. State*, 201 N.E.3d 1186, 1197 (Ind. Ct. App. 2023) ("A party may not raise an argument or objection on appeal that was not raised before the trial court."). Waiver notwithstanding, a warrantless search is constitutional if it fits into one exception to the Fourth Amendment's warrant requirement. *See M.O. v. State*, 63 N.E.3d 329, 331 (Ind. 2016) ("the State bears the burden to show that one of the well-delineated exceptions to the warrant requirement applies") (internal quotation marks omitted). Because the State proved the search fell within the automobile exception, the State did not also need to prove the search fell within the search incident to arrest exception. In addition, when the dog sniff occurred, the vehicle was parked on a public street, and the police had already arrested Young because of the outstanding warrant. The dog sniff did not prolong Young's detention, and officers are permitted to walk dogs past vehicles parked in public because a dog sniff is not a protected search. *See Danh v. State*, 142 N.E.3d 1055, 1063 (Ind. Ct. App. 2020) ("A dog sniff sweep of a vehicle is not a search protected by the Fourth Amendment.") (internal quotation marks omitted), *trans. denied*.

knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[20] Young argues the warrantless search of his vehicle is similar to the search our Indiana Supreme Court held violated the Indiana Constitution in *Brown v. State*, 653 N.E.2d 77 (Ind. 1995). In *Brown*, an individual robbed a drug store in Indianapolis, and a witness reported seeing the getaway car. *Id*. at 78-79. The next day, officers found a vehicle matching the witness's description of the getaway car parked outside of Brown's house. *Id*. at 79. The officers "impounded and 'inventory-searched'" the vehicle and found several pieces of incriminating evidence. *Id*. Brown argued the search was unconstitutional, the trial court overruled his objection, and this court affirmed the trial court. *Id*. However, our Indiana Supreme Court reversed. *Id*. at 80. The Court held that the search was unreasonable under the Indiana Constitution and the officers should have obtained a warrant before conducting the search. *Id*. The Court noted the car was parked in a residential neighborhood and was surrounded by police cars. *Id*. For that reason, it was unlikely the car would have been moved while the officers sought a warrant, and there was neither a shortage of time nor an emergency that would have made seeking a warrant impractical. *Id*. While *Brown* did not explicitly evaluate the search of Brown's vehicle in light of the *Litchfield* factors, our Supreme Court clarified in *Hardin v. State* that the search of Brown's vehicle was unconstitutional because of "low police

suspicion or concern and a lack of law-enforcement needs (*Litchfield* factors one and three)[.]" 148 N.E.3d 932, 945 (Ind. 2020), *cert. denied* 141 S. Ct. 2468 (2021).

[21] In contrast, in *Hobbs*, our Indiana Supreme Court held the *Litchfield* factors supported finding the search of Hobbs's vehicle was reasonable. 933 N.E.2d at 1287. The police arrested Hobbs on an outstanding warrant when Hobbs was inside the Pizza Hut restaurant where he worked. *Id*. at 1284. When Hobbs refused to consent to a police search of his vehicle, the police summoned a K-9 officer to the scene. *Id*. The police dog alerted, and the police then searched Hobbs's vehicle. *Id*. The officers found marijuana and paraphernalia inside the car. *Id*. Hobbs challenged the search, but our Indiana Supreme Court held the search did not violate the Indiana Constitution. *Id*. at 1287. The Court explained police had a high degree of suspicion or concern that a violation of law occurred when the police dog alerted to the presence of narcotics in Hobb's vehicle. *Id*. In addition, the Court noted the search of Hobb's vehicle did not disrupt his normal activities because he was already under arrest on an outstanding warrant at the time of the search, and the Court explained "the same considerations underlying the federal automobile exception support permitting the officers to secure the evidence without delay." *Id*. The Court distinguished the search of Hobbs's vehicle from the search in *Brown* because "although the car [in *Brown*] appeared to be the one used in the robbery, there was no probable cause to believe the car contained evidence of a crime, and

there was no certainty that detaining the car would not inconvenience its owner." *Id*.

[22] With respect to the search of Young's vehicle, the police had a high degree of suspicion or concern that a violation of law occurred when a police dog alerted to the presence of drugs in Young's vehicle, and that concern only heightened as the police found drugs and drug paraphernalia inside the vehicle. Like Hobbs, Young was already under arrest on an outstanding warrant at the time of the search of his vehicle, and therefore, the search constituted a minimal disruption of his normal activities. In addition, the police have a significant need to intervene and remove illicit drugs because "distributing or possessing even small amounts of drugs threatens society." *State v. Timbs*, 169 N.E.3d 361, 373 (Ind. 2021). Therefore, the warrantless search of Young's vehicle was not unreasonable under the Indiana Constitution. *See*, *e.g.*, *McKinney v. State*, 212 N.E.3d 697, 707-08 (Ind. Ct. App. 2023) (holding search of defendant's vehicle was reasonable under the totality of the circumstances when dog alerted to the presence of drugs in vehicle, defendant's vehicle was already set to be impounded at the time of the search, and law enforcement need to find evidence of drug activity was high), *reh'g denied*, *trans. denied*.

## 2. Chain of Custody

[23]     Young also asserts the trial court erred in admitting the evidence Detective Martin collected at the scene[8] because the State did not sufficiently prove the chain of custody for that evidence.  Our standard of review regarding chain-of-custody claims is well-settled:

> An adequate foundation establishing a continuous chain of custody is established if the State accounts for the evidence at each stage from its acquisition, to its testing, and to its introduction at trial.  Under the chain of custody doctrine, an adequate foundation is laid when the continuous whereabouts of an exhibit is shown from the time it came into the possession of the police.

> To establish a proper chain of custody, the State must give reasonable assurances that the evidence remained in an undisturbed condition.  However, the State need not establish a perfect chain of custody, and once the State strongly suggests the exact whereabouts of the evidence, any gaps go to the weight of the evidence and not to admissibility.  Moreover, there is a presumption of regularity in the handling of evidence by officers, and there is a presumption that officers exercise due care in handling their duties.  To mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with.

---

[8] Specifically, Young challenged Exhibit 4 (scale), Exhibit 5 (syringes), Exhibit 6 (latex band), Exhibit 7 (black magnetic boxes), Exhibit 8 (baggies), Exhibit 9 (methamphetamine found in the door panel), Exhibit 10 (methamphetamine found in Young's pocket), and Exhibit 11 (baggies found in Young's pocket).

*Espinoza v. State*, 859 N.E.2d 375, 382 (Ind. Ct. App. 2006) (internal citations and quotation marks omitted).

[24]    In *K.W. v. State*, we discussed the varying foundational requirements the State must prove to establish an adequate chain of custody for fungible and nonfungible items:

> "For fungible items such as blood and drugs, an adequate foundation is laid when the whereabouts of an exhibit is shown from the time it came into the possession of the police." *Mateo v. State*, 981 N.E.2d 59, 66 (Ind. Ct. App. 2012), *trans. denied*. For fungible items, the State lays a proper foundation when "a witness is able to identify the item, . . . the item is relevant to the disposition of the case[,] . . . [and the State] provid[es] a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next." *Id.* at 66-67. "If the State presents evidence that strongly suggests the exact whereabouts of the evidence at all times, that is sufficient." *Id.* at 67. In contrast, for "nonfungible items like guns and vehicles, the State need only show that the item is what it is purported to be and that it is in a substantially unchanged state" from when it was initially collected by police. *Id.*

216 N.E.3d 505, 516 (Ind. Ct. App. 2023) (all quotation marks, citations, and brackets in original), *trans. denied*.

[25]    Young notes that, although the police arrested him on March 8, 2023, the first entry on the chain of custody form Young received on the eve of trial was dated March 16, 2023. Young relies on *Graham v. State*, 255 N.E.2d 652 (Ind. 1970), to argue that the State's proof of the chain of custody was insufficient. In *Graham*, our Indiana Supreme Court held that an unexplained six-day break in

the chain of custody "precluded a finding that the white powder substance allegedly received by a 'buyer' from appellant was in fact the same white powder found to contain heroin in the police laboratory." *Id*. at 653.

[26] However, unlike *Graham*, there is not an unexplained absence in Young's case. Detective Martin testified that he took possession of the items at the scene, bagged them, and personally transported them to FPD headquarters. Narcotics Detective Harris testified that he received the items from Detective Martin, packaged and sealed the items, placed an evidence tag with an incident number and date on each item, and placed the evidence in a secure drop box. Evidence Technician Riley testified he removed the evidence from the secure drop box on March 16, 2023. He processed the items, including starting a chain of custody form, and placed the items in storage in the secure property room. Thus, officer testimony established the whereabouts of the bagged evidence between March 8, 2023, and March 16, 2023, and we hold the State laid an adequate foundation regarding chain of custody to support admission of the bagged evidence at trial. *See*, *e.g.*, *Jones v. State*, 218 N.E.3d 3, 10 (Ind. Ct. App. 2023) (holding State met burden of establishing chain of custody of fungible DNA samples through officer testimony), *trans. denied*.

## 3. Sufficiency of Evidence

[27] Young contends the State presented insufficient evidence to sustain his convictions of dealing in methamphetamine and unlawful possession of a syringe. When faced with challenges to the sufficiency of evidence, we apply a

"well settled" standard of review that leaves determination of the weight of the evidence and credibility of the witnesses to the fact-finder. *Teising v. State*, 226 N.E.3d 780, 783 (Ind. 2024). "We consider only the evidence most favorable to the trial court's ruling and will affirm a defendant's conviction unless 'no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.'" *Id*. (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

[28] A person who knowingly or intentionally possesses, with intent to deliver, at least ten grams of methamphetamine commits Level 2 felony dealing in methamphetamine. Ind. Code § 35-48-4-1.1. Likewise, a person who possesses with the intent to commit a drug offense a hypodermic syringe or needle or an instrument adapted for the use of a controlled substance or legend drug by injection in a human being commits Level 6 felony unlawful possession of a syringe. Ind. Code § 16-42-19-18. "We have long recognized that a conviction for possession of contraband may be founded upon actual or constructive possession." *Griffin v. State*, 945 N.E.2d 781, 783 (Ind. Ct. App. 2011). "Actual possession occurs when a person has direct physical control over an item. Constructive possession occurs when a person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017) (internal citation and quotation marks omitted).

[29] "In cases where the accused has exclusive possession of the premises on which contraband is found, an inference is permitted that he or she knew of the

presence of contraband and was capable of controlling it." *Griffin*, 945 N.E.2d at 784. "A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). However, in the case of non-exclusive possession of the premises on which the contraband is found, the State must support the inference that the defendant intended to exercise dominion and control over the contraband "with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item." *Id*. at 174-75. Such additional circumstances include:

> (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

*Id*. at 175. In addition, other factors beyond the six listed above may support a finding that the defendant had constructive possession of contraband. *Canfield v. State*, 128 N.E.3d 563, 573 (Ind. Ct. App. 2019), *trans. denied*.

[30] Young argues that while "he had been in the proximate area where the drugs and paraphernalia were found inside the door panel of the SUV, there was no evidence he knew of their existence." (Appellant's Br. at 12.) Young notes that Altepeter testified that someone had lived in the vehicle before it was abandoned in the tow yard. Young contends that "[a]lthough Altepeter stated

that he did not observe any issues with the doors and that nothing was loose, he acknowledged that he had not taken the panel off, did not know what was there, and he didn't know if the previous owner put something in there." (*Id.*)

[31] However, we agree with the State that "several circumstances allowed the jury to find that [Young] had the intent and capability to maintain dominion and control over the items" found behind the driver's door panel. (Appellee's Br. at 14.) Young was the only person in the vehicle when the police arrested him, and he had been sitting in the driver's seat for at least an hour before the police arrested him. Further, Young does not challenge the drugs and paraphernalia police found on his person and in a magnetic box concealed in a missing air vent near the vehicle's instrument cluster, and the items found in the door panel are of the same character as those items. Young also appeared to be actively disassembling the center console of the vehicle at the time of his arrest, presumably because he was trying to create additional places in the vehicle to hide contraband. While the vehicle was still registered to Altepeter at the time of Young's arrest, Altepeter testified he had not transferred title to Young at that point because Young had not yet paid the full purchase price to Altepeter

[32] Young also made incriminating statements in his phone calls to friends and family from the jail. For example, Young's statement "they got me with an ounce almost . . . yeah they got me," (Ex. 20 at 1:23-30), implicitly acknowledges his possession of the large amount of methamphetamine found behind the door panel because the total weight of methamphetamine found in Young's possession only approaches an ounce if that amount is included in the

calculation. Therefore, a reasonable jury could conclude Young constructively possessed the methamphetamine and syringes found in the door panel, and consequently, we hold the State presented sufficient evidence to sustain Young's convictions. *See*, *e.g.*, *Parks v. State*, 113 N.E.3d 269, 274 (Ind. Ct. App. 2018) (holding the State presented sufficient evidence defendant constructively possessed gun and drugs found in the backseat of his car given the defendant's proximity to the items, his incriminating statements, the strong odor of marijuana, and the presence of items suggestive of manufacturing or dealing).

## 4. Inappropriate Sentence

[33] Last, Young asserts his aggregate sentence of thirty-five years is inappropriate given the nature of his offenses and his character. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, [we] find that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our determination "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

> Our review is deferential to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate. We consider not only the aggravators and mitigators found by the trial court, but also any other factors appearing in the record. The appellant bears the burden of demonstrating his sentence [is] inappropriate.

*George v. State*, 141 N.E.3d 68, 73-74 (Ind. Ct. App. 2020) (internal citations omitted), *trans. denied*. Our review is "holistic" and takes into consideration "the whole picture before us." *Lane v. State*, 232 N.E.3d 119, 127 (Ind. 2024). Appellants need not prove their sentence is inappropriate for both their character and offense, but "to the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief." *Id*.

[34] "Our analysis of the nature of the offense requires us to look at the nature, extent, heinousness, and brutality of the offense." *Pritcher v. State*, 208 N.E.3d 656, 668 (Ind. Ct. App. 2023). As our Indiana Supreme Court has explained, "compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality)" may lead to a downward revision of the defendant's sentence. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[35] "When considering the nature of the offense, we first look to the advisory sentence for the crime." *McHenry v. State*, 152 N.E.3d 41, 46 (Ind. Ct. App. 2020). A Level 2 felony is punishable by imprisonment "for a fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and one-half (17 ½) years." Ind. Code § 35-50-2-4.5. Here, Young's twenty-five-year sentence for Level 2 felony dealing in methamphetamine was above the advisory term for that level of offense, but it was below the maximum sentence. That sentence was subject to an enhancement of between six and twenty years because the trial court adjudicated him to be a habitual offender,

Ind. Code § 35-50-2-8(i)(1) (2017), but the trial court only enhanced his sentence by ten years. In addition, the trial court imposed the advisory sentence for Young's Level 6 felony illegal possession of a syringe conviction. *See* Ind. Code § 35-50-2-7 (Level 6 felony punishable by imprisonment "for a fixed term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year.").

[36] Young argues the nature of his offenses merits a lesser sentence because he "acknowledged ownership of the drugs on his person" and "[n]o one was injured regarding these offenses." (Appellant's Br. at 23-24.) We disagree. Young possessed twenty-two grams of methamphetamine, which is over twice the amount required for his offense, and he possessed other paraphernalia and items consistent with drug dealing. He also made significant efforts to hide his criminal activity from police by concealing his contraband in the voids of his vehicle. Young moreover committed these crimes while released on bond. All these facts render the nature of Young's offenses worse than the "typical" versions of each offense. *See*, *e.g.*, *Murray v. State*, 182 N.E.3d 270, 278 (Ind. Ct. App. 2022) (holding nature of defendant's offense was more egregious than a typical version of that offense because of the large amount of methamphetamine defendant sold). Thus, we cannot say Young's sentence is inappropriate for his offenses.

[37] With respect to an offender's character, one relevant fact is the defendant's criminal history. *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). Young's criminal history is significant. He has two prior felony convictions and

ten misdemeanor convictions, and Young's history also includes violations of his terms of probation. While Young has a long history of substance abuse and expressed a desire at his sentencing to receive treatment, his history shows continued abuse of substances even after receiving treatment. Young contends he is employable because he has a GED and various work-related certifications. He also stated at sentencing that he worked as a cook while incarcerated in jail. However, Young's employment history does not merit a lesser sentence. *See Jones*, 218 N.E.3d at 16 ("Lastly, Jones claims that his gainful employment is evidence of his positive character. We have held before that most people are employed such that this consideration does not warrant a lesser sentence."). Therefore, we hold Young's sentence also is not inappropriate for his character. *See*, *e.g.*, *Murray*, 182 N.E.3d at 279 (defendant's twenty-five-year sentence was not inappropriate given his character, particularly his prior criminal history and repeated failures to abide by his terms of probation).

## Conclusion

[38] The search of Young's vehicle, which included pulling on the loose door panel attached to Young's front driver's side door, was permissible pursuant to the Fourth Amendment's automobile exception, and the search was also reasonable under the Indiana Constitution. Moreover, the testimony of Detective Martin, Detective Harris, and Evidence Technician Riley laid an adequate foundation regarding the chain of custody of the items Detective Martin collected for those items to be admissible at trial. In addition, the State presented sufficient evidence to prove Young constructively possessed the drugs

and paraphernalia found in the vehicle's door panel. Finally, Young's aggregate thirty-five-year sentence is not inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm the trial court.

[39] Affirmed.

Brown, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Carrillo Law LLC
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana